FRANK M. ROSS *v.* HAROLD E. HEGSTROM, STATE JAIL ADMINISTRATOR

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 12, 1968—decided January 9, 1969

*Joseph D. Harbaugh,* chief public defender, with whom, on the brief, was *Joseph M. Shortall,* special public defender, for the appellant (plaintiff).

*Peter W. Gillies,* special assistant state's attorney, for the appellee (defendant).

House, J. This is an appeal from the dismissal of an application for a writ of habeas corpus. The plaintiff's application complained that he was confined in the state jail in Haddam under an extradition warrant issued by the Governor of Connecticut, pursuant to § 54-163 of the General Statutes, authorizing his rendition to the executive authority of the Commonwealth of Kentucky. See General Statutes § 54-166. It is his claim that the confinement is illegal because the Commonwealth of Kentucky has failed to produce "sufficient evidence" that he has fled from justice in that jurisdiction. The application was made to the Superior Court for Middlesex County on behalf of the plaintiff by the chief public defender of the Circuit Court, "[h]is attorney, pursuant to appointment under the provisions of Section 54-81a *C.G.S.,* as amended by Public Act 189 (1967)."[1] The requested writ was issued on October 20, 1967.

On the same day the plaintiff, still acting by the chief public defender of the Circuit Court, filed in

[1] Public Acts 1967, No. 189, amended § 54-81a of the General Statutes, which provides for the appointment of public defenders by judges of the Circuit Court, to add the following provision: "The public defender shall also represent indigent accused charged under the provisions of chapter 964 in application for writs of habeas corpus under the provisions of section 54-166 and the entry fee to the appropriate court shall be waived and the fee of the process server shall be approved as reasonable expenses and paid as provided herein."

the Superior Court a motion for expenses to take depositions. In this motion he moved, "pursuant to Section 54-81a, *C.G.S.*, for reasonable expenses to be incurred in the taking of depositions from witnesses in the State of West Virginia, the State of Ohio and the Commonwealth of Kentucky." As grounds for the motion, the plaintiff alleged his confinement pursuant to the Governor's warrant, that Kentucky claimed he had committed the crimes of murder and armed robbery in Paducah, Kentucky, on or about May 12, 1967, at or about 10 p.m., that at the time of the alleged crime he was in West Virginia, that there are at least five witnesses who will testify to his presence in West Virginia at or about 7 p.m. and 11 p.m. on that date, that prior and subsequent to that date he was in Ohio and there are witnesses who will so testify, and that there are two witnesses incarcerated in Kentucky who will testify that he was not in Kentucky at or about the time of the alleged crime. The motion further asserted that the testimony of these witnesses is essential to the plaintiff's defense to the request for extradition by Kentucky. The motion concluded with the request that the Superior Court "grant the Motion for the allocation of reasonable funds to defray the cost of transportation and other expenses for the applicant's counsel and the applicant's investigator."

The defendant filed a return to the writ, pleading the confinement of the plaintiff pursuant to a warrant signed by the Lieutenant Governor, as acting Governor, on October 16, 1967, authorizing rendition of the plaintiff to the Commonwealth of Kentucky and denying the plaintiff's allegation that the confinement was illegal.

The judgment discloses that a hearing was held by the court on November 3, after which the court

denied the plaintiff's motion for expenses to take depositions, found the issues for the defendant on the application for the writ of habeas corpus and ordered that it be dismissed. From this judgment the plaintiff has taken this appeal. The sole assignment of error relates to the denial of the plaintiff's motion for expenses to take depositions, the plaintiff claiming that the denial deprived him of due process of law and equal protection of law in violation of the fourteenth amendment to the United States constitution.

The court filed no memorandum of decision to explain either the basis of its ruling denying the motion or the ratio decidendi of the judgment. It did file a finding, no part of which has been attacked by either the plaintiff or the defendant. It contains several findings of fact relevant to the limited assignment of error made by the plaintiff: The extradition papers presented in Connecticut by the Governor of the Commonwealth of Kentucky were in proper order and properly authenticated pursuant to the requirements of the Uniform Criminal Extradition Act as adopted in Connecticut (see General Statutes c. 964); the plaintiff's present counsel represents him pursuant to § 54-81a of the General Statutes as it has been amended by Public Acts 1967, No. 189; the plaintiff's motion was filed pursuant to the provisions of this statute as amended, and it alleged that certain witnesses are essential to the plaintiff's defense to Kentucky's request for extradition; to grant the motion would have resulted in an attempt to try the merits of the Kentucky criminal case in this jurisdiction and, if, in fact, the plaintiff should not be guilty of any crime in Kentucky because he was not in that state at the time it was committed, a finding to that effect would ulti-

mately be entered in the Kentucky tribunal; the defense presented the testimony of two witnesses to the effect that the alleged crimes mentioned in the extradition papers did in fact occur on May 12, 1967; the plaintiff had admitted to an agent of the Federal Bureau of Investigation that he had been in Kentucky sometime between April, 1967, and June 9, 1967; and during portions of that time the plaintiff was in the company of two individuals who were recently tried in Kentucky for murder and armed robbery.

The finding further includes a statement by the court that "[b]ased upon the testimony produced by the defendant, the court denied plaintiff's 'Motion for Expenses To Take Depositions.'" The finding also recites that the plaintiff failed to produce any testimony, including his own, that he was not in Kentucky at the time of the crimes cited in the extradition papers and "in short, the plaintiff himself did not testify at the hearing on November 3, 1967." It also found that the "[p]laintiff's failure to produce testimony of third parties sufficient to sustain his burden of proof on the question of fugitivity rested solely on his financial inability to defray the cost of producing out-of-state witnesses in court or their properly-obtained testimony by depositions" and that "[w]ithout testimony by the plaintiff on the question of fugitivity, the plaintiff failed to sustain his burden of proof on the writ of habeas corpus."

On this record, we are unable to make a truly definitive disposition of this controversy. One of the difficulties arises from the fact that none of the extradition papers or copies thereof were made exhibits in the case, nor have any of them been included in the record or in an appendix to either

brief. We therefore have no way of knowing what claim or evidence of fugitivity Kentucky supplied to the Governor of Connecticut, a matter of major importance since the plaintiff's petition for habeas corpus is based on the allegation that it was not sufficient.

It does appear from the finding that the court denied the motion on two grounds: (a) to grant it would result in an attempt to try in this hearing in Connecticut the merits of the criminal case pending in Kentucky and (b) on the basis of "the testimony produced by the defendant."

The first-mentioned ground for the court's denial is obviously predicated on the principle that Kentucky is the proper jurisdiction to determine the plaintiff's guilt or innocence of the crimes charged against him, that his claimed objection to the validity of the extradition proceedings is in effect an alibi defense to those charges, which defense should properly be raised and determined on a trial in Kentucky, and that it is therefore not properly the subject of adjudication in these proceedings.

It is of course true that Connecticut will not decide any of the issues involved in the criminal charges pending against the plaintiff in Kentucky, and this necessarily includes the merits of any alibi defense which might be raised in those proceedings. *Rosenberg* v. *Slavin,* 122 Conn. 304, 308, 309, 188 A. 272. "[T]he constitutionally required surrender is not to be interfered with by the summary process of *habeas corpus* upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place." *Drew* v. *Thaw,* 235 U.S. 432, 440, 35 S. Ct. 137, 59 L. Ed. 302; *Cappola* v. *Platt,* 123 Conn. 38, 42, 192 A. 156; see General Statutes § 54-176. The question of the

merits of such a defense, however, if it should be raised on a criminal trial in Kentucky, while factually related to the question of fugitivity raised in these extradition proceedings, is separate and distinct from it. The issue of the status of the plaintiff as a fugitive from justice has clearly been raised in the proceedings in this state and must be determined in this jurisdiction.

Extradition proceedings arise from § 2 of the fourth article of the United States constitution, which in pertinent part provides: "A person charged in any State with Treason, Felony, or other Crime, *who shall flee from Justice,* and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." (Italics supplied.) See also 18 U.S.C. § 3182; *Mandarano* v. *Tierney,* 151 Conn. 155, 195 A.2d 48. Probable cause to find that a person sought to be extradited is a fugitive from justice in the demanding state is a condition precedent to valid extradition.

General Statutes § 54-159 provides: "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under section 54-162, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state . . . ." Section 54-162 expressly excepts from any requirement of an allegation that the accused was in the demanding state at the time of the commission of the alleged crime cases of any person in this state charged in the demanding state with committing an act in this state, or in a third state, intentionally resulting in a crime in the de-

manding state. It states that the provisions of the Uniform Criminal Extradition Act, as adopted in Connecticut (General Statutes, c. 964), not otherwise inconsistent shall apply to such cases "even though the accused was not in that state at the time of the commission of the crime and has not fled therefrom."[2]

In *Moulthrope* v. *Matus*, 139 Conn. 272, 275, 93 A.2d 149, cert. denied, 345 U.S. 926, 73 S. Ct. 785, 97 L. Ed. 1357, we said: "An application to the governor for a warrant of extradition presents the twofold question whether the person demanded has been substantially charged with a crime against the laws of the state where he is wanted and whether he is a fugitive from justice from that state. *Ross* v. *Crofutt*, 84 Conn. 370, 373, 80 A. 90. We . . . discuss the second, i.e., whether the plaintiff is a fugitive from justice. The inquiry is one of fact, to be resolved by the chief executive of the state upon which demand is made. His decision cannot be impeached unless it conclusively appears that the plaintiff could not be, under the law, a fugitive. *Brewer* v. *Goff*, 138 F.2d 710, 712. 'A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from

[2] Section 54-162 was first enacted in 1957 (Public Acts 1957, No. 362 § 6), and extradition cases decided before that date must be read with the understanding that prior to that date there was no statutory exception to the requirement that the demanding state allege that the accused person was in the demanding state at the time of the commission of the alleged crime.

justice, and if found in another state must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any State.' *Appleyard* v. *Massachusetts,* 203 U.S. 222, 227, 27 S. Ct. 122, 51 L. Ed. 161; *Lee Won Sing* v. *Cottone,* 123 F.2d 169, 172, 74 App. D.C. 374; *Barrett* v. *Bigger,* 17 F.2d 669, 670, cert. denied, 274 U.S. 752, 47 S. Ct. 765, 71 L. Ed. 1333." See also *Strassheim* v. *Daily,* 221 U.S. 280, 285, 31 S. Ct. 558, 55 L. Ed. 735; *Stenz* v. *Sandstrom,* 143 Conn. 72, 75, 118 A.2d 900; *Taft* v. *Lord,* 92 Conn. 539, 542, 103 A. 644; Uniform Criminal Extradition Act § 10, notes 11, 14, 17, and cases cited, 9 U.L.A. (1957).

The plaintiff having conceded the authenticity of the extradition papers submitted by Kentucky and not having attacked the finding of the court that they were in proper order, and the chief executive of this state having issued his warrant, "[h]is decision cannot be impeached unless it conclusively appears that the plaintiff could not be, under the law, a fugitive." *Moulthrope* v. *Matus,* supra. Despite, however, the summariness of the habeas corpus proceedings and the heavy burden resting upon the plaintiff to show "conclusively" that he could not be, under the law, a fugitive, the plaintiff could not be barred from attempting such proof because in the attempt he might also introduce evidence which, if introduced at a trial on the merits, might tend to support an alibi defense. We conclude therefore that the first ground upon which the court based its denial of the plaintiff's motion was legally insufficient.

We find no merit whatsoever in the second ground on which the court based its denial, i.e., upon "the testimony produced by the defendant." This testimony, as recited in the finding, apparently did nothing more than corroborate some of the allegations of the admittedly authentic extradition papers submitted by Kentucky and the decision of the acting governor of this state, based thereon, that the plaintiff was in fact a fugitive from justice. Although such corroboration obviously would make even heavier the burden of the plaintiff to prove conclusively that he could not be, under the law, a fugitive, it was not a valid reason to bar him from the introduction of evidence in support of his claim.

A further finding of the court now becomes of particular significance since we have concluded that neither of the reasons given by the court for denying the plaintiff's motion was legally sufficient. The court expressly found: "Plaintiff's failure to produce testimony of third parties sufficient to sustain his burden of proof on the question of fugitivity rested solely on his financial inability to defray the cost of producing out-of-state witnesses in court or their properly-obtained testimony by depositions."

There is no appendix to the defendant's brief. That of the plaintiff is limited solely to testimony of two law enforcement officers corroborating the allegations of the application for extradition that the plaintiff was a fugitive from justice in Kentucky. The finding discloses that the plaintiff did not testify. There is, accordingly, in the record not a scintilla of evidence to support the allegations contained in the plaintiff's motion for expenses to take depositions. That motion, itself, is so drafted as to avoid any affirmative allegation that the plaintiff was not

in the demanding jurisdiction at or about the time of the alleged crime. Instead, it alleges the existence of several witnesses who will testify to that effect—which is quite a different matter—and that he was in other states prior to and subsequent to May 12, 1967. The plaintiff's affirmative claim is limited to the assertion that at the time of the alleged crime he was in West Virginia—a fact which under the law applicable to accomplices and accessories and in circumstances governed by General Statutes § 54-162 is not necessarily exculpatory. On the record, therefore, there is nothing but the bare, unsupported allegations of the motion with no evidence whatsoever offered to prove them. Were it not for the finding of the court to which we have just referred, therefore, since the plaintiff had the burden of proof on the allegations contained in his motion and offered no evidence to prove them, we could not find harmful error in the court's denial of the motion. A correct result or decision based on a faulty rationale will not necessarily render a case reversible. *Keyes* v. *Brown*, 155 Conn. 469, 476, 232 A.2d 486; *Powers* v. *Common Council*, 154 Conn. 156, 161, 222 A.2d 337.

We cannot, however, so conclude, in the light of the court's finding in connection with its decision on the merits of the plaintiff's petition for the writ of habeas corpus and its decision adverse to the plaintiff on the issue of fugitivity, that the plaintiff's failure to sustain his burden of proof on the issue of fugitivity "rested solely on his financial inability to defray the cost of producing out-of-state witnesses in court or their properly-obtained testimony by depositions." Although this finding is not entirely free from ambiguity, its purport is to the effect that, if the plaintiff had the funds to produce

certain obtainable evidence, he would have been able to sustain his burden of proof on this issue and the failure to sustain his burden of proof "rested solely" on his financial disability. This finding has not been attacked by the defendant and is conclusive on this appeal. There is error despite the failure of the plaintiff to produce any evidence whatsoever to sustain his burden of proving the allegations contained in the motion, because the court has found, on some undisclosed basis, that in the habeas corpus proceedings the incarcerated plaintiff was unable to sustain his burden of proof on the issue of fugitivity solely because of indigency. As the United States Supreme Court said in *Roberts* v. *LaVallee*, 389 U.S. 40, 42, 88 S. Ct. 194, 19 L. Ed. 2d 41: "Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution" and " 'to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.' [*Smith* v. *Bennett*, 365 U.S. 708, 709, 81 S. Ct. 895, 6 L. Ed. 2d 39.]" See also *Long* v. *District Court*, 385 U.S. 192, 87 S. Ct. 362, 17 L. Ed. 2d 290; *Draper* v. *Washington*, 372 U.S. 487, 83 S. Ct. 774, 9 L. Ed. 2d 899; *Douglas* v. *California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811; *Griffin* v. *Illinois*, 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891.

Since the court found that the indigency of the plaintiff was the sole reason why he was unable to sustain his burden of proof on the issue of fugitivity, the judgment dismissing the writ of habeas corpus cannot be permitted to stand, and a new trial must be granted on the issues raised by that petition. In

that trial, if the indigency of the plaintiff is established, then upon proper application and a showing of reasonable cause it will be incumbent upon the court to make such orders as are reasonably necessary to afford him an adequate and effective opportunity, regardless of his indigency, to assert the legal rights granted to him, under § 54-166 of the General Statutes, to test the legality of his arrest and confinement. See *Draper* v. *Washington,* supra; *Burns* v. *Ohio,* 360 U.S. 252, 79 S. Ct. 1164, 3 L. Ed. 2d 1209; *Eskridge* v. *Washington State Prison Board,* 357 U.S. 214, 78 S. Ct. 1061, 2 L. Ed. 2d 1269; *Griffin* v. *Illinois,* supra.

The "adequate" and "effective" opportunity which must be afforded an indigent applicant in habeas corpus proceedings such as this does not necessarily require that the court grant the exact assistance requested or that the state be compelled by his request to expend unlimited sums. The court is free to "find other means of affording adequate and effective appellate review to indigent defendants." *Griffin* v. *Illinois,* supra, 20. Also, "[s]ince the constitutional rights of an accused are involved in such an application, asserting indigency and nonfrivolous grounds for appeal, we deem it necessary that the record disclose the basis for whatever decision the trial court may reach." *State* v. *Hudson,* 154 Conn. 631, 638, 228 A.2d 132.

Since a new trial is necessary, we note one other issue raised in the present proceedings and briefed by the plaintiff on this appeal. As we have noted, although the plaintiff's petition was brought to the Superior Court, the plaintiff was there and is here represented by a Circuit Court public defender appointed by the judges of that court. The petition for the writ of habeas corpus was signed on behalf of

the plaintiff by the Circuit Court chief public defender as "[h]is attorney, pursuant to appointment under the provisions of Section 54-81a *C.G.S.,* as amended by Public Act 189 (1967)." The plaintiff's motion for expenses to take depositions begins: "Comes now the applicant, Frank M. Ross, by his court-appointed counsel, Joseph D. Harbaugh, Chief Public Defender, Connecticut Circuit Court, and respectfully moves this Court, pursuant to Section 54-81a, *C.G.S.* for reasonable expenses to be incurred in the taking of depositions . . . ." The plaintiff has claimed and briefed an argument that § 54-81a as amended authorizes the Superior Court to allow to Circuit Court public defenders sums for necessary disbursements by such public defenders. With this we cannot agree.

Section 54-81a as it read before the 1967 amendment clearly applied only to the Circuit Court. It provided that the judges of that court should appoint at least one public defender for each circuit and such additional assistant public defenders as they determine are necessary, that in any criminal action in the Circuit Court the judge before whom the matter is pending may designate a public defender to represent a defendant and that "[t]he judge may allow a reasonable sum for necessary disbursements by such public defender or assistant public defender, and such amount shall be paid by the state in the same manner as other court expenses." The phrase "[t]he judge" clearly has reference only to a judge of the Circuit Court.

The 1967 amendment to § 54-81a, as we have noted, provides that Circuit Court public defenders shall represent indigent accused in applications for habeas corpus writs under the provisions of § 54-166. With respect to expenses in such proceedings, the

amendment only provides that the entry fee to the appropriate court shall be waived and the fee of the process server shall be approved "as reasonable expenses and paid as provided herein." Since the word "herein" can only be taken to refer to § 54-81a and since that statute provides only for the allowance by a judge of the Circuit Court of disbursements by a public defender of that court, we cannot find, despite the urging of the plaintiff's counsel, that that statute provides for the allowance of expenses by any authority except a judge of the Circuit Court.

We thus find the anomaly of a statutory provision that an officer of a legislative court is designated to serve as an officer of a constitutional court but required to seek from the legislative court approval for his necessary disbursements in the constitutional court. That such a provision is of doubtful constitutional validity is obvious. *Adams* v. *Rubinow,* 157 Conn. 150, 163 n.4, 251 A.2d 49. That question, however, has not been raised in the present case, and its decision is not necessary for the disposition of this appeal.

Although § 54-81a does not authorize payment on order of the Superior Court for the expenses of the Circuit Court public defender which the plaintiff seeks to have authorized pursuant to it, the Superior Court in which the habeas corpus proceedings are pending is not powerless to provide to an indigent petitioner the constitutionally required adequate and effective means to assert his claims of illegal confinement. We had recent occasion to note the many provisions which have been made for assistance to those accused or convicted of crime who claim inability to assert their legal rights because of indigency. See *State* v. *Hudson* 154 Conn. 631, 638, 228 A.2d 132. Particularly, we note the avail-

ability of public defenders appointed by the judges of the Superior Court to serve in that court with express statutory provision for the payment of their necessary expenses. General Statutes § 54-81. Supplementing the availability of their services, in each county there has been appointed by the judges of the Superior Court a panel of special attorneys whose members are available for appointment in any matter arising out of a detention or prosecution in a criminal case where a person is entitled to counsel as a matter of law and is without funds sufficient to employ counsel, with provision for the compensation of such special attorneys "together with necessary disbursements in connection therewith." Practice Book §§ 472A–472D. Thus, provison has been made that "an accused who lacks funds is assured of representation by experienced counsel, who, subject to the court's approval, are able to incur whatever expense is necessary for the proper protection of the rights of the accused, not only in the trial court but also on appeal." *State* v. *Reid,* 146 Conn. 227, 234, 149 A.2d 698.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.