ANDREW J. NAREL, JR. *v.* VICTOR LIBURDI, WARDEN, COMMUNITY CORRECTIONAL CENTER, BRIDGEPORT

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued October 14—decision released December 15, 1981

*David S. Golub,* with whom, on the brief, were *Ernest F. Teitell* and *Wayne D. Skigen,* for the appellant (plaintiff).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Richard L. Shiffrin* and *Brian E. Cotter,* assistant state's attorneys, for the appellee (defendant).

PARSKEY, J. This case involves the relationship of the Uniform Criminal Extradition Act, General Statutes §§ 54-157 through 54-185, and the Interstate Agreement on Detainers, General Statutes §§ 54-186 through 54-192. The precise question presented by this appeal is whether, if we assume that the plaintiff has properly invoked his rights under the agreement on detainers, the failure of the charging state to bring him to trial within the time limit prescribed by the detainer agreement precludes that state from invoking the provisions of the extradition act. The short answer to that question is "no."

In 1977, the plaintiff was being held in custody in the federal correctional institution at Danbury, Connecticut. On September 6, 1977, the commonwealth of Virginia filed a detainer with the prison authorities at Danbury notifying them of an outstanding escape charge. When the plaintiff learned of the detainer he contacted Robert Flynn, an official in the records department at Danbury, and orally requested Flynn to send a notice to Virginia seeking prompt disposition of the escape charge pursuant to the Interstate Agreement on Detainers, 18 U.S.C. App. (1976), pp. 1395–98; Va. Code § 53-304.1. Flynn refused to send the notice and told the plaintiff to file his own motion for a

speedy trial. The plaintiff thereupon prepared a notarized motion for speedy trial which he sent to the Manassas, Virginia court. This motion, the receipt of which was acknowledged by the clerk's office at the 31st Judicial District of Virginia, Prince William General District Court, Manassas, Virginia, made specific reference to the detainer charge of escape lodged against the plaintiff by the commonwealth of Virginia on September 6, 1977, and requested a speedy trial of the charge. The motion, which was prepared on a form made available to the plaintiff at the federal prison, was sworn to before Ron Simpson, a caseworker at Danbury.

The Virginia authorities took no action on the pending escape charge against the plaintiff until he had completed his federal sentence and was released from federal custody on September 1, 1978. At that time, he was arrested on a fugitive warrant issued by the commonwealth of Virginia and thereafter was held under a rendition warrant issued by the governor of this state as a result of a requisition made upon him by the governor of Virginia. The plaintiff filed a habeas corpus petition which, after an evidentiary hearing, was dismissed and this appeal followed. While the trial court dismissed the petition for failure of the plaintiff to satisfy the notice requirements of the agreement on detainers, the view we take of this case makes it unnecessary for us to reach that issue.

I

The extradition clause of the constitution of the United States, article four, § 2, cl. 2, provides: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be

found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." The extradition act implements this clause by providing the procedural mechanism for the summary disposition of extradition cases. *Glavin* v. *Warden,* 163 Conn. 394, 395n, 311 A.2d 86 (1972). The hearing in such cases is limited to four questions, namely, (a) whether the extradition documents on their face are in order, (b) whether the plaintiff has been charged with a crime in the charging state, (c) whether the plaintiff is the person named in the request for extradition and (d) whether the plaintiff is a fugitive. *Cuyler* v. *Adams,* 449 U.S. 433, 443n, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981); *Michigan* v. *Doran,* 439 U.S. 282, 289, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978). The custodial court may not inquire into the merits of the charge or into any claimed procedural infirmities, constitutional or otherwise, lurking in the prosecution. *Michigan* v. *Doran,* supra; *Ross* v. *Hegstrom,* 157 Conn. 403, 409, 254 A.2d 556 (1969); *Rosenberg* v. *Slavin,* 122 Conn. 304, 308, 188 A. 272 (1936). Such matters are to be determined by the court in the charging state. *Ross* v. *Hegstrom,* supra. Questions involving the status of the charge or the status of the petitioner as a fugitive from justice, however, are appropriate issues to be determined by the courts in the custodial state. *Ross* v. *Hegstrom,* supra, 410. For example, if subsequent to the issuance of the formal documents by the governors of the appropriate states, the plaintiff received a pardon for the crime charged, or the charge was nolled by the prosecution or dismissed by the court, it could not seriously be questioned that the plaintiff would no longer be subject to an

outstanding charge nor could it be seriously questioned that the court in the custodial state could not examine the pertinent documents for the purpose of determining the status of the charge. See *Moulthrope* v. *Matus,* 139 Conn. 272, 278, 93 A.2d 149, cert. denied, 345 U.S. 926, 73 S. Ct. 785, 97 L. Ed. 1357 (1952).

In sum, while both the extradition clause and the extradition act contemplate the prompt return of a fugitive from justice as soon as the state from which he fled demands him and, to assure such return, preclude the asylum state from engaging in a plenary review of the charge; *Michigan* v. *Doran,* supra, 289–90; *Sweeney* v. *Woodall,* 344 U.S. 86, 73 S. Ct. 139, 97 L. Ed. 114 (1952), reh. denied, 344 U.S. 916, 73 S. Ct. 332, 97 L. Ed. 702 (1953); this does not mean that the asylum court is merely a clerical functionary in extradition matters. To the contrary, in the limited area within which it operates, the judicial authority of the asylum court is undiminished. See *Ross* v. *Hegstrom,* supra, 410. This brings us to the heart of the issue in this case, namely, the applicability and effect of the detainer agreement.

## II

The detainer agreement is an interstate compact[1] and as such its interpretation is a matter of federal law. *Cuyler* v. *Adams,* 449 U.S. 433, 442, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981). Article I of the act, noting "that charges outstanding against a prisoner, detainers based on untried indictments, infor-

---

[1] The Interstate Agreement on Detainers has been adopted by the United States, the District of Columbia and all of the states with the exception of Alaska, Louisiana and Mississippi. 11 U.L.A. 90 (1981 Sup.).

mations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation," states that the purpose of the agreement is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."

The detainer agreement contains two trigger mechanisms. The provisions of the agreement itself are activated only when the receiving or charging state lodges with the sending or asylum state a detainer based on a pending indictment, information or complaint. *People* v. *Lincoln,* 42 Colo. App. 512, 514, 601 P.2d 641 (1979); *Burns* v. *State,* 578 S.W.2d 650, 652 (Tenn. Crim. App. 1978). At that point the time clock can be activated by the detainee, under article III, or by the prosecuting authority in the charging state, under article IV. In this case, the applicable provision is article III.[2]

---

[2] "[General Statutes] Sec. 54-186. AGREEMENT. The Agreement on Detainers is hereby entered into by this state with all jurisdictions legally joining therein in form substantially as follows: The contracting states solemnly agree that: . . .

### Article III

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of the imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable

To initiate proceedings under article III, the detainee must give or send to his custodian in the asylum state a written request for final disposition of the charge lodged against him in the charging state and shall cause to be delivered to the prosecuting officer and the appropriate court of the pros-

continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragaph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

"(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of correction or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

"(e) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall also be deemed to be a waiver

ecutor's jurisdiction written notice of the place of his imprisonment and of his request for final disposition. The initial burden is on the custodian to inform the detainee of the source and contents of any detainer lodged against him and to inform him of his right to make a request for final disposition of the pending charge. Article III (c). Thereafter the burden is on the detainee to give or send to his custodian his written notice and request. Article III (b). The notice and request must be accompanied by a certificate of the custodian stating specified information pertaining to the detainee's confinement. Article III (a). The duty is on the custodian to forward the written notice, request and certificate promptly to the appropriate prosecuting authority and court by registered or certified mail, return receipt requested. Article III (b).

## III

The detainer agreement sets forth specific sanctions for failure of the charging state to bring the detainee to trial within the prescribed time limits. First, the pending charge is nullified. Second, the charge is required to be dismissed with prejudice

---

of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d) hereof, and a waiver of extradition to the receiving state to serve any sentence there imposed upon him, after completion of his term of imprisonment in the sending state. The request for final disposition shall also constitute a consent by the prisoner to the production of his body in any court where his presence may be required in order to effectuate the purposes of this agreement and a further consent voluntarily to be returned to the original place of imprisonment in accordance with the provisions of this agreement. Nothing in this paragraph shall prevent the imposition of a concurrent sentence if otherwise permitted by law.

"(f) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in paragraph (a) hereof shall void the request."

and third, the detainer is invalidated. The circumstances under which the sanctions are imposed are spelled out in the agreement. Nullification of the charge occurs only in situations where the detainee has been returned to the charging state. Article III (d) provides: "If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." A similar provision, in article IV (e), covers situations where the prosecuting authority is the moving party. Dismissal of the charge with prejudice can only occur in the charging state. Obviously, the asylum court, lacking extraterritorial jurisdiction, is powerless to dismiss the underlying charge.

Under article V (c), in cases of refusal or failure of the charging state to accept temporary custody of the detainee, "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force and effect." Thus, a fair reading of the detainer agreement leads inexorably to the conclusion that remedial relief under the agreement must be sought in the charging state, in this case in the commonwealth of Virginia.

## IV

Even when the plaintiff's situation is viewed in light of the purposes to be served by the agreement, the charging state is the appropriate jurisdiction for remedial relief. Any relief granted by the

asylum state would be at best only temporary and evanescent. Because the charging state is not, nor is it required to be, a party to the extradition hearing in the asylum state; *Sweeney* v. *Woodall,* supra; it is not bound by the results of that hearing. Let us assume, despite the textual language to the contrary, that upon the expiration of the prescribed time limits the pending charge loses its viability. In the absence of a dismissal with prejudice, there would be nothing to prevent the charging state from instituting a prosecution for the underlying offense based on a new charge and thereafter seeking extradition anew. Upon transfer of the detainee to the charging state, the Connecticut judgment would not be a bar to the trial of any of the issues raised by the plaintiff before the trial court in this case. Furthermore, with the institution of a new prosecution, a new detainer could be lodged against the plaintiff were he at that time incarcerated in a correctional institution in this state. It is a cardinal rule of statutory construction that a statute is not to be construed so as to thwart its purpose. *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975). Therefore, the reading which we give to the detainer agreement not only conforms to its language but, equally important, achieves its central purpose, namely, to secure a speedy and definitive disposition of pending charges for prisoners subject to detainers.

## V

Finally, we note the practice of courts in charging states routinely to dismiss with prejudice underlying charges against prisoners whose custodians have failed to comply with the procedural requirements

of the detainer agreement. See, e.g., *Rockmore* v. *State*, 21 Ariz. App. 388, 519 P.2d 877 (1974); *People* v. *Esposito*, 37 Misc. 2d 386, 238 N.Y.S.2d 460 (1960); *Nelms* v. *State*, 532 S.W.2d 923 (Tenn. 1976); *State* v. *Black*, 594 S.W.2d 738 (Tenn. Crim. App. 1979); *Burns* v. *State*, 578 S.W.2d 650 (Tenn. Crim. App. 1978). In this regard, custodial officials in the asylum and the charging states are viewed as agents for each other. *People* v. *Diaz*, 94 Misc. 2d 1010, 1014, 406 N.Y.S.2d 239 (1978). If we assume the facts as stated by the plaintiff, the commonwealth of Virginia can adequately protect his rights by granting the plaintiff an opportunity to be heard on the notice issue. *Sweeney* v. *Woodall*, 344 U.S. 86, 90, 73 S. Ct. 139, 97 L. Ed. 114 (1952), reh. denied, 344 U.S. 916, 73 S. Ct. 332, 97 L. Ed. 706 (1953). We find that the detainer agreement does not bar the extradition proceeding in this case because there exists an outstanding charge against the plaintiff. It is not incumbent upon this court to decide whether the plaintiff has satisfied the agreement's requirements and is thereby entitled to have his charge dismissed with prejudice. Although the trial court dismissed the petition for lack of proper notice under the agreement, we affirm the decision because it nevertheless reached the correct result. *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978).

There is no error.

In this opinion the other judges concurred.