[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE PETITIONER'S MOTION FOR SUMMARY JUDGMENT
This case requires the court to examine certain aspects of the interrelationship between proceedings under the Interstate Agreement on Detainers, General Statutes Sec. 54-186, et seq. and the Uniform Criminal Extradition Act, General Statutes Sec.54-157 et seq. The petitioner had entered a guilty plea to a felony drug possession charge in New York State and had been released on his own recognizance pending sentencing. He did not, however, appear for his sentencing, and a bench warrant was issued in New York on August 22, 1990. While incarcerated in Connecticut on unrelated charges, the New York bench warrant was lodged against him as a detainer on January 3, 1991. Pursuant to the Interstate Agreement on Detainers ("IAD"), the petitioner filed a Request for Final Disposition of all "untried indictments, informations and complaints", which request was received by New York authorities on or about February 13, 1991.[1]
Following the receipt of petitioner's request, no action was undertaken to return him to New York for sentencing. Indeed, on August 28, 1991, he was released from incarceration after having served his Connecticut sentence, more than two weeks after the closing of the 180 day "window" provided for New York authorities to act on the request. The petitioner was, however, subsequently arrested on new Connecticut charges. Then, on June 7, 1994, he was arrested by the Connecticut State Police and formally charged with being a fugitive from justice in violation of General Statutes Sec. 54-169, based on the same unsentenced New York felony conviction.
The petitioner then filed a writ of habeas corpus. His claim was that he had fulfilled his obligations under the IAD by filing his Request for Final Disposition and that, the State of New York having failed to respond within the 180 window provided by the statute, that state had forfeited its right to have him returned to New York to be sentenced. Relying on Tinghitella v.California, 718 F.2d 308 (9th Cir. 1983), this court, Stanley, J. concluded that the New York case was an "untried indictment" within the meaning of the IAD and that the petitioner's request CT Page 6428 to be returned was proper under the Interstate Agreement on Detainers. Because the court viewed the New York effort to have the petitioner returned as untimely, the 180 day "window" from the date of the Request for Final Disposition having long since been closed, it granted the petition for a writ of habeas corpus.
Following that decision, the criminal proceeding charging the petitioner with being a fugitive from justice was dismissed in the Superior Court for the 7th Geographical Area, Reilly, J., which judgment was not appealed. The respondent in the habeas case, however, sought and received Judge Stanley's permission to appeal that decision. That appeal was dismissed as moot by the Appellate Court on May 3, 1995. Thomas v. Warden, No. AC 14085.
On January 6, 1995, the petitioner completed the Connecticut sentence that he had been serving at the time of Judge Stanley's decision. He was released from incarceration but was immediately arrested again by the Connecticut State Police pursuant to a governor's warrant issued in accordance with the Uniform Criminal Extradition Act ("UCEA"), once again seeking his return to New York in connection with the same unsentenced felony drug possession charge. The petitioner was released on a written promise to appear, and he then filed this new habeas corpus petition to challenge the governor's warrant.
The validity of the original fugitive from justice proceeding and that of the instant governor's warrant each depend, in part, on whether the petitioner is a "fugitive" within the meaning of the respective statutes that gave rise to the petitioner's being placed in custody. The petitioner now seeks summary judgment in his favor, contending that the issue of "fugitivity" was decided by Judge Stanley and that his decision is a final judgment entitled to preclusive effect under the doctrine of res judicata. The respondent claims that res judicata is not applicable and that the issue of the petitioner's fugitivity in connection with a proceeding under the Uniform Criminal Extradition Act ("UCEA") is an issue of fact established conclusively by the allegations of the governor's warrant.
Parenthetically, the present issues in this case were initially raised by the petitioner in the form of a "Motion to Dismiss Governor's Warrant". Having determined that the petitioner had utilized an inappropriate procedural vehicle, this court denied the Motion to Dismiss without prejudice and invited the submission of a Motion for Summary Judgment, which is CT Page 6429 generally considered to be the most appropriate vehicle for raising res judicata and collateral estoppel claims. Jackson v.R.G. Whipple, Inc., 225 Conn. 705, 627 A.2d 374 (1993); Zizka v.Water Pollution Control Authority, 175 Conn. 682, 687,490 A.2d 509 (1985); Covenant Home, Inc. v. Town of Cromwell,4 C.S.C.R. 26 (1989). The petitioner has now filed the appropriate motion and supporting memorandum, the respondent has filed his objection and memorandum, and issue is properly joined.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Telesco v. Telesco, 187 Conn. 715, 447 A.2d 752
(1982); Yanow v. Teal Industries, Inc., 178 Conn. 262,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. United Oil Co. v. Stamford UrbanRedevelopment Commission, 158 Conn. 364, 260 A.2d 596 (1969). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,362 A.2d 857 (1975).
At the time of the filing of the purported Motion to Dismiss, the respondent's first response to the res judicata issue was that, since Judge Stanley's decision was on appeal to the Appellate Court, that judgment was not yet final and could not be given preclusive effect. Laurel Inc. v. Commissioner ofTransportation, 180 Conn. 11 (1980). The petitioner, citingCollins v. Loisel, 262 U.S. 426, 430 (1923) and other sources, contended that the decision was final and could have preclusive effect even in the absence of a resolution on appeal. Those particular considerations are no longer relevant as the appeal is no longer pending, having been dismissed as moot.
The appeal of Judge Stanley's decision having been dismissed on grounds of mootness, the underlying judgment, while voidable, retains a presumption of validity. "Trial court orders arising from a judgment the appeal from which was dismissed as moot carry a rebuttable presumption of validity." Commissioner of MotorVehicles v. DeMilo Co., 233 Conn. 254, 272 (1995). It is therefore necessary to examine whether the doctrine of res judicata is applicable to the facts of the present case.
The doctrine of res judicata may be stated thus: a final CT Page 6430 judgment on the merits bars relitigation in any court of the same cause of action. See. e.g., Connecticut Water Company v.Beausoleil, 204 Conn. 38, 43, 526 A.2d 1329 (1987). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the action." Federated Department Stores, Inc., etal v. Marilyn Moitie, et al, 452 U.S. 394, 398, 101 S.Ct. 2424,2428 (1981).[2]
 "The doctrine of res judicata is a judicially created doctrine, which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquility. Public policy, judicial orderliness, economy of judicial time, and the interest of litigants, as well as the peace and order of society, all require that stability should be accorded judgments, that controversies once decided on their merits shall remain in repose, that inconsistent judicial decisions shall not be made on the same set of facts, and that there be an end to litigation which, without the doctrine of res judicata, would be endless." 46 Am.Jur.2d Judgments § 395, pp. 559-561.
"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." Federated DepartmentStores, Inc., et al v. Marilyn Moitie, et al, 452 U.S. 394, ___,101 S.Ct. 2424, 2429 (1981), quoting Baldwin v. Traveling Men'sAssn., 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed 1244 (1931). Connecticut law is in accord with this proposition. "Our rules of res judicata are based on the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." Duhaime v. American Reserve Life Ins.Co., 200 Conn. 360, 363-364, 511 A.2d 33 (1986).
Res Judicata is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts. Hart Steel Co. v.Railroad Supply Co., 244 U.S. 299, 37 S.Ct. 506, 507,61 L.Ed 1148 (1917). Its purposes include promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system and providing repose by preventing one from being harassed by vexatious litigation. State v. Ellis, 197 Conn. 436, 466,497 A.2d 974 (1987). CT Page 6431
The recent case of Jackson v. R. G. Whipple, Inc., 225 Conn. 705,627 A.2d 374 (1993) gave our Supreme Court an opportunity to discuss res judicata in detail. The Court noted that "the terms res judicata and collateral estoppel refer to the concepts of claim preclusion and issue preclusion respectively." Both concepts "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." State v. Ellis, 197 Conn. 436, 465,497 A.2d 974 (1985).
Although claim preclusion and issue preclusion often appear to merge into one another in practice, analytically they are regarded as distinct. "[C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) Scalzo v. Danbury, 224 Conn. 124,128, 617 A.2d 440 (1992); see also Aetna Casualty SuretyCo. v. Jones, 220 Conn. 285, 303-304, 596 A.2d 414 (1991).Jackson v. Whipple, supra, at 712, 713.
A "former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made."Connecticut Water Co. v. Beausoleil, 204 Conn. 38, 43,526 A.2d 1329 (1987). The "operative facts" of a claim determine whether such claim is identical to a previously litigated cause of action. Kaufman v. Somers Board of Education, 368 F. Sup. 28, 32
(1973).
A cause of action is:
 . . . that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. Bridgeport Hydraulic Co. v. Pearson, 139 Conn. 186, 197, 91 A.2d 778 [1952]; Veits v. Hartford, 134 Conn. 428, 434, 58 A.2d 389 [1948]. A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. Pavelka v. St. Albert Society, 82 Conn. 146, 147, 72 A. 725 [1909]. Gallo v. G. Fox Co., 148 Conn. 327, 330, 170 A.2d 724 (1961). "Even though a single group of facts CT Page 6432 may give rise to rights for several different kinds of relief, it is still a single cause of action. [Bridgeport Hydraulic Co. v. Pearson, supra, 197]." Duhaime v. American Reserve Life Ins., Co., 200 Conn. 360, 365, 511 A.2d 333 (1986). Rogozinski v. American Food Service Equipment Corp., 34 Conn. App. 732, 738 (1994).
"Where a judgment on the merits is rendered in favor of the defendant, the plaintiff is precluded from subsequently maintaining a second action based upon the same operative facts in which he seeks an alternative remedy . . . in such a case he has had his day in court, and having lost upon the merits he is not entitled again to litigate his claim." Restatement of Judgments, § 65 C, at 272 (1942). A difference in the nature of the relief which has been requested will not prevent application of the doctrine of res judicata. Lehto v. Sproul,9 Conn. App. 441, 519 A.2d 1214 (1987); Vakalis v. Kagan, 18 Conn. App. 363,557 A.2d 1285 (1989); Williams v. Ward, 556 F.2d 1143,1154 (2nd Cir. 1977), cert. denied 434 U.S. 944, 98 S.Ct. 469,54 L.Ed.2d 323 (1977).
"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." Inre Juvenile Appeal (83-DE), 190 Conn. 310, 316, 460 A.2d 1277
(1983). Whereas claim preclusion involves relitigation of a particular cause of action, however, collateral estoppel, or issue preclusion, applies "if an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Scalzo v. Danbury,224 Conn. 124, 617 A.2d 440 (1992) (citing Restatement (Second), Judgments § 27 (1982)). `For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.'" Virgo v.Lyons, 209 Conn. 497, 501, 551 A.2d 1243 (1988); see also Ashe v.Swenson, 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970);Saporoso v. Aetna Life Casualty Co., 221 Conn. 356,603 A.2d 1160 (1992); State v. Hope, 215 Conn. 570, 584, 577 A.2d 1000
(1990), cert. denied, 498 U.S. 1088, 111 S. Ct 968,112 L.Ed.2d 1054 (1991). "[T]he prior litigation must have resolved the same legal or factual issue that is present in the second litigation."Upjohn Co. v. Planning Zoning Commission, 224 Conn. 82, 94,616 A.2d 786 (1992). CT Page 6433
An issue is "actually litigated" if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. 1 Restatement (Second), Judgments 27, comment (d) (1982). An issue is necessarily determined if, "in the absence of a determination of the issue, the judgment could not have been validly rendered." F. James G. Hazard, Civil Procedure (3d Ed. 1985) 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), Judgments 27, comment (h) (1982).
The issue sought to be precluded need not be precisely identical to that decided in the prior case as long as it is substantially the same or at least clearly derivative of the prior court's decision on that issue. Upjohn v. Planning ZoningCommission, supra. "To the extent that collateral estoppel has a fixed star, the requirement of issue identity between the prior and present action is immutable. Under the doctrine of collateral estoppel, the issue prong is satisfied if the pleadings, parties and claims reveal significant similarities." Scheiner v. Wallace,832 F. Sup. 687, 695 (SDNY 1993). "An issue may be `actually' decided even if it is not explicitly decided, for it may have constituted, logically or practically, a necessary component of the decision reached." Dennis v. Rhode Island Hospital TrustNational Bank, 744 F.2d 893, 899 (1st Cir. 1984). The Restatement's requirement that an issue be "actually litigated" embodies the important concern that the parties be cognizant of and interested in an issue before they are precluded from litigating it.
In McNellis v. First Federal Savings and Loan Association,364 F.2d 251 (CA2 1966), the Second Circuit held that "a reasonable doubt as to what was decided in the first action should preclude the dramatic remedy of foreclosing a party from litigating an essential issue." Id at 257. See also, Northern OilCompany v. Socony Mobil Oil Company, 368 F.2d 384, 388 (CA2 1966); Kaufman v. Moss, 420 F.2d 1270, 1274 (CA3 1970). "[I]f reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied."Matter of Braniff Airways, Inc. 783 F.3d 1283, 1289 (5th Cir. 1986), citing Kaufman v. Moss, 402 F.2d 1270, 1274 (3rd Cir.),cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d (1970). Issue CT Page 6434 preclusion "`must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v.United States, 332 U.S. 575, 579 [68 S.Ct. 237, 98 L.Ed. 180
(1948)]." State v. Aparo, 223 Conn. 384, 390, 614 A.2d 401
(1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1414,122 L.Ed.2d 785 (1993)." Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 717, fn. 8. (1993).
At stake in this case is the doctrine of collateral estoppel, with the petitioner claiming that the issue of "fugitivity" was actually decided in a prior proceeding. This court, however, has at least a reasonable doubt about whether this issue was actually decided. As a result of Judge Stanley's ruling that the unsentenced New York felony was an untried indictment within the meaning of the IAD, he found that the failure of the State of New York to act within the 180 day "window" caused it to lose its opportunity to proceed under the IAD. That, however, is all that it lost as a result of Judge Stanley's ruling. In his memorandum of law, petitioner states: "[Judge Stanley] also held that the Petitioner was no longer a fugitive from justice." Petitioner's Memorandum of Law, unnumbered page 3. A careful review of Judge Stanley's opinion reveals that he held no such thing. The word "fugitive" is mentioned only the Judge Stanley's outline of the history of the case. The interrelationship, if any, between the loss of the right to the return of the petitioner in accordance with the IAD and the petitioner's status as a "fugitive" was simply not discussed.
The service of the governor's warrant on the petitioner requires this court to consider the issue of fugitivity:
 "Once the governor has granted extradition, the court considering release on habeas corpus can no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." Id., 289; see Cuyler v. Adams, 449 U.S. 433, 443 n. 11, 101 S.Ct. 703, 66 L.Ed. 641 (1981); Barrila v. Blake, supra, 634; Hill v. Blake, 186 Conn. 404, 409 n. 5 441 A.2d 841 (1982); Narel v. Liburdi, supra.
Giardino v. Bourbeau, 193 Conn. 116, 122 (1984). CT Page 6435
As to the last of these issues, it is of course the petitioner's contention that this issue was decided in his favor in the first case. However, in the context of a governor's warrant,
 "[t]he inquiry whether or not the plaintiff is a fugitive from justice is one of fact to be resolved by the chief executive of the state to whom demand for extradition is made, and his judgment thereon is not subject to judicial impeachment by habeas corpus unless it conclusively appears that the person sought to be extradited could not be a fugitive from justice under the law. South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292; Munsey v. Clough, . . .] 196 U.S. 364, 375, 25 S.Ct. 282 49 L.Ed. 515]; Brewer v. Goff, 138 F.2d 710, 712 (10th Cir.); Ross v. Hegstrom, 157 Conn. 403, 411, 254 A.2d 556; Moulthrope v. Matus, 139 Conn. 272, 275, 93 A.2d 149, cert. denied, 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357; 31 Am.Jur.2d, Extradition, § 62. Pursuant to the authorities cited above, the plaintiff in order to defeat the prima facie case made by the governor's warrant of extradition must prove conclusively that he is not a fugitive from the demanding state."
Glavin v. Warden, 163 Conn. 394, 396-7 (1972).
Once a governor's warrant has been executed any claimed prior illegalities on the part of the authorities becomes moot. Parksv. Bourbeau, 193 Conn. 270, 288 (1984). "[A]ny other judicial inquiry in the asylum state into the matter exceeds the court's jurisdiction." Id., at 289, quoting In re Fabricant, 118 Cal.App.3d 115,120, 178 Cal.Rptr. 145 (1981).
 "[T]he legality or illegality of the [prior] fugitive warrant proceedings are moot since that warrant [had served its purpose and] became functus officio upon issuance and service of the rendition warrant." People ex rel. Gummow v. Larson, 35 Ill.2d 280, 282, 220 N.E.2d 165; Lott v. Heyd, 315 F.2d 350 (5th Cir.); State ex rel. Brown v. Hedman, 280 Minn. 69, 157 N.W.2d 758; Bursque v. Moore, 26 Conn. Sup. 469, 227 A.2d 255.
Glavin v. Warden, 163 Conn. at 400.
It cannot be said that in granting the petition for a writ of habeas corpus in Thomas v. Warden, the issue of the petitioner's fugitivity was "actually litigated and determined by a valid and CT Page 6436 final judgment, and the determination is essential to the judgment." Scalzo v. Danbury, 224 Conn. 124, 617 A.2d 440 (1992). If anything, Judge Stanley assumed that the petitioner was a fugitive within the meaning of the IAD by virtue of the existence of the unsentenced "untried indictment", but that New York had lost its right to pursue petitioner under the act by waiting too long. Since the concept of fugitivity is not discussed in Judge Stanley's Memorandum of Decision, it cannot be concluded beyond a reasonable doubt that this issue was "fully and fairly litigated in the first action", that it was "actually decided" or that "the decision must have been necessary to the judgment." Virgo v.Lyons, 209 Conn. 497, 501, 551 A.2d 1243 (1988).
The one Connecticut case that appears to reach a contrary result, although without reference to res judicata or collateral estoppel, is Bursque v. Moore, 26 Conn. Sup. 469 (1967). In that case, Judge (later Justice) Parskey, based on the IAD's purpose of giving "formal recognition to the detainer while at the same time assuring a prisoner a speedy trial on the outstanding charge, upon his request", concluded that a "necessary corollary to such recognition and assurance is to preclude extradition once the detainer becomes inoperative. In these circumstances, a prisoner ceases to be a fugitive from justice by operation of the interstate agreement". Id. at 474-75. The demanding state having failed to exercise its right to procure the presence of the petitioner upon receipt of a proper request, Judge Parskey held that the governor lacked jurisdiction to issue a subsequent rendition warrant.
Judge Parskey's opinion cited no case law in support of this "necessary corollary". Several more recent out of state cases, however, specifically permit a state whose detainer has been dismissed to utilize the extradition process upon the completion of the inmate's sentence. See, Hickey v. State, 349 N.W.2d 772,777 (Iowa App. 1984); Baker v. Schubin, 72 Misc.2d 413,339 N.Y.S.2d 360 (1972). More significantly, our Supreme Court cited these cases with approval, and gave no mention at all to Bursque,
in Remick v. Lopes, 203 Conn. 494, 500 n. 5 (1987). While dictum, the Supreme Court's comments suggest strongly that Bursque is not to be viewed as binding on this court.
In short, Judge Stanley's decision in the initial habeas proceeding is not entitled to be given preclusive effect with respect to the issues raised by the present proceeding. The petitioner's motion for summary judgment, based on the doctrine CT Page 6437 of res judicata, is therefore denied.
Jonathan E. Silbert, Judge