ELBERT T. BURSQUE *v.* FRANCIS J. MOORE, JAIL CUSTODIAN, ET AL.

SUPERIOR COURT    NEW HAVEN COUNTY    FILE No. 110132
AT NEW HAVEN

Memorandum filed May 10, 1966

*Robert Kapusta,* of Ansonia, for the plaintiff.

*George R. Tiernan,* state's attorney, and *David B. Salzman,* assistant state's attorney, for the named defendant.

PARSKEY, J. In February, 1965, the plaintiff, who was then lodged in the state jail in New Haven awaiting disposition of criminal charges pending against him in Connecticut, became aware of a warrant lodged against him by the state of New Hampshire charging him with the offense of obtaining money by false pretenses, allegedly committed by him in Hillsborough County, New Hampshire. During his confinement and prior to April 23, 1965, the plaintiff made at least thirty-five unsuccessful written requests of the New Haven jailer for a "speedy trial form" for the purpose of obtaining a speedy trial disposition of the New Hampshire charges. On April 23, 1965, the plaintiff was sentenced in the Superior Court at New Haven to one year in jail on the Connecticut charges. On April 24, 1965, he again requested a speedy trial form. This request was not honored. From April 24 to June 5, 1965, he made an average of three written requests per week for a speedy trial form with the same negative response.

On August 25, 1965, a request of the plaintiff for final disposition of the New Hampshire charge pursuant to article III of § 54-186 of the General Statutes was received by the prosecuting attorney and by the Superior Court of New Hampshire. This request, which was sent by the plaintiff's attorney, was not accompanied by an offer by the jailer to deliver temporary custody of the plaintiff as specified in article V of § 54-186. On August 30, 1965, and again on January 26, 1966, the prosecuting attorney of the Superior Court of New Hampshire wrote to the jailer at New Haven advising that no such offer was ever received. A copy of the January, but not the August, letter was sent to the plaintiff's attorney. At no time did the Connecticut authorities send to the New Hampshire authorities an offer to deliver temporary custody of the plaintiff.

The plaintiff, with time off for good behavior, was entitled to be released from the Connecticut charge on February 20, 1966. The 180-day period during which he was required under article III to be brought to trial in New Hampshire expired on February 20, 1966. He was not released but instead was held first on a fugitive warrant and subsequently on a governor's warrant, issued April 4, 1966, after the institution of extradition proceedings. Thereafter the plaintiff instituted the present writ of habeas corpus. At no time did he file a writ of mandamus to compel the defendants to comply with the requirements of article V respecting making an offer to deliver temporary custody. Both Connecticut (General Statutes § 54-186) and New Hampshire (N.H. Rev. Stat. Ann., c. 606-A) are parties to the interstate agreement on detainers.

The plaintiff has been held at the state jail first under a detention warrant or detainer issued by

appropriate authorities of the state of New Hampshire, second under a fugitive warrant issued pursuant to § 54-169 of the General Statutes, and finally under a governor's warrant issued pursuant to § 54-163. The question presented by this proceeding is whether the plaintiff is now being held illegally. The determination of this question turns on the legal effect of the interstate agreement on detainers as embodied in § 54-186 of the General Statutes.

A detainer or hold order is an informal demand by one exercising public authority for the possession of a person already in the lawful custody. Black, Law Dictionary (4th Ed. 1951). In the field of interstate relations, a detainer puts the prison authorities in the custodial state on notice that the prisoner is charged with crime in another state and is a fugitive from justice. The nature of a detainer is such that even were it only a fugitive alert its very existence tends to create serious problems in the correctional field. These are spelled out in article I of the statutory agreement as follows: "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative proce-

dures. It is the further purpose of this agreement to provide such cooperative procedures."

The defendants do not question that the form of notice and request for final disposition specified in article III were received by the appropriate authorities in the state of New Hampshire, nor that on February 20, 1966, 180 days had elapsed since receipt of such request and notice. Their contention is that the statutory time did not begin to run because of the failure of the appropriate authority in Connecticut to offer to deliver temporary custody of the plaintiff as required by article V. If this contention is sound, then the very purpose of the detainer agreement could be frustrated by studied inaction on the part of the prison authorities in the custodial state, with the prisoner being none the wiser. In the present case, for example, the prisoner was unaware of the failure of the custodial authorities to comply with the mandatory requirements of article V until some 156 days after the receipt of his request for final disposition. That aside, if the statute intended the running of time to depend upon the offer to deliver temporary custody, it would have been a simple matter to have so stated. With the history of the plaintiff's many frustrations before it, the court is loathe to write into the statutory agreement a requirement that would leave the prisoner's hourglass in the custody of his captors, especially in view of the command of article IX that the "agreement shall be liberally construed so as to effectuate its purposes." The court concludes therefore that, the time limit specified in article III having elapsed, the detainer lodged against the plaintiff ceased to be of any force and effect.

There remains for consideration the question of the validity of the fugitive and governor's warrants issued pursuant to the Uniform Criminal Extradi-

tion Act (General Statutes §§ 54-157—54-185). With respect to the fugitive warrant, since the thirty-day commitment decreed pursuant to such warrant has already expired and since the present commitment is pursuant to the governor's warrant, the issue on the fugitive warrant for the purposes of this proceeding is moot. With respect to the governor's warrant, the question is whether the governor had jurisdiction to issue the warrant for the plaintiff's arrest. "An application to the governor for a warrant of extradition presents the twofold question whether the person demanded has been substantially charged with a crime against the laws of the state where he is wanted and whether he is a fugitive from justice from that state." *Moulthrope* v. *Matus,* 139 Conn. 272, 275 (1952). A governor has no jurisdiction to issue a warrant for the return to a demanding state of a person charged with crime unless there is probable cause that the person is a fugitive from justice. *Stenz* v. *Sandstrom,* 143 Conn. 72, 75 (1955). The question here presented is whether under the statutory agreement a prisoner ceases to be a fugitive from justice once the detainer is rendered ineffectual by failure of the prosecuting authorities in the charging state to bring the prisoner on for trial within the prescribed time limits. Prior to the adoption of the interstate agreement, detainers were treated as a matter of comity rather than law. N.H. Judicial Council 7th Biennial Rep., p. 28 (1958). Custodial states were free to ignore detainers; demanding states were free to institute extradition proceedings irrespective of the existence or validity of a previously issued detainer. The purpose of the agreement was to give formal recognition to the detainer while at the same time assuring a prisoner a speedy trial on the outstanding charge, upon his request. A necessary corollary to such recognition and assur-

ance is to preclude extradition once the detainer becomes inoperative. In these circumstances, the prisoner ceases to be a fugitive from justice by operation of the interstate agreement. It follows from this that the governor lacked jurisdiction to issue his rendition warrant.

Accordingly, the petition is granted and the plaintiff is ordered discharged forthwith.