CHARLES THOMLINSON v. VICTOR LIBURDI, WARDEN

SUPERIOR COURT     FAIRFIELD COUNTY     FILE NO. 166899
AT BRIDGEPORT

Memorandum filed September 27, 1977

*Lesser & Sobel,* for the plaintiff.

*Richard F. Jacobson,* assistant state's attorney, for the defendant.

ZARRILLI, J.   The parties appear to be in substantial accord with respect to the facts on which the application for a writ of habeas corpus is based. The plaintiff, Charles Thomlinson, who is also known as Robert Boyer, was arrested in the state of Connecticut on an extradition warrant signed by the governor of Connecticut on July 20, 1977, at the request of the governor of North Carolina, charging him "with the crime of escape prior to completion of sentence."  The plaintiff is now at liberty under a bond of $5000 pending disposition of the charge against him.

On January 15, 1971, the plaintiff was convicted of common-law robbery in Washington County, North Carolina, and was sentenced to a prison term of six to eight years.  While serving that sentence he admittedly escaped from the custody of the authorities in North Carolina and came to Connecticut.   On October 25, 1972, and for some time prior thereto, the plaintiff was incarcerated in the state prison at Somers, Connecticut, where he was serving a three-to-seven-year term for a crime committed in this state.

A detainer was lodged against the plaintiff with the Connecticut authorities by the state of North Carolina while he was serving his prison term in Connecticut.   On November 22, 1972, he made a demand upon the district attorney of the Superior Court of Washington County, North Carolina, requesting a final disposition, within 180 days, of all indictments, informations or complaints against him in accordance with the provisions of article 3 of the interstate agreement on detainers, General Statutes § 54-186, to which compact the state of North Carolina is a party.   N.C. Gen. Stat. §§ 148-89 to 148-95.

Although more than 180 days had elapsed since the request for a disposition of charges pending against him was made by the plaintiff, and although the state of North Carolina was notified on June 11, 1973, of its failure to act and the detainer was returned to that state, no further action was taken by it until May 16, 1977, when the governor of North Carolina made a demand on the governor of Connecticut for the arrest of the plaintiff and his return to North Carolina. As previously stated, a governor's extradition warrant was issued by the state of Connecticut on July 20, 1977.

In the meantime, the plaintiff has completed the term of imprisonment imposed on him by the Connecticut authorities. He has resumed cohabitation with the members of his family in this state. He is gainfully employed and he appears to be completely rehabilitated.

Under these circumstances, the plaintiff now claims that he is no longer a fugitive from justice and that since no action was taken on his request for a speedy disposition of all charges against him, the state of North Carolina has no jurisdiction over him and the application for a writ of habeas corpus should be granted. On the other hand, the state advances the argument that the plaintiff escaped from the North Carolina authorities while serving a term of imprisonment and that there were then no untried indictments, informations or complaints pending against him, so that § 54-186 was inapplicable. The narrow issue thus presented to the court for its determination centers around the interpretation to be given to the key word "untried" as it appears in articles 1 and 3 (a) of § 54-186, which, in pertinent part, permit a prisoner against whom there are pending in another state untried indict-

ments, informations or complaints to require that those charges be disposed of in that state within 180 days after he has taken certain specified steps.

The purpose of the agreement on detainers, to which both Connecticut and North Carolina are parties, is to obviate difficulties in securing speedy trials of persons already incarcerated in other jurisdictions, to reduce uncertainties which obstruct programs of prisoner treatment and rehabilitation, and to encourage the expeditious and orderly disposition of untried indictments, informations and complaints. See General Statutes § 54-186.

An exhaustive search, both by counsel and by the court, reveals that the precise issue at bar has never been decided by the Supreme Court in Connecticut, and therefore that it comes before the court as one of first impression. In fact, there appears to be a dearth of cases on this issue even in foreign jurisdictions.

Webster's Third New International Dictionary defines the word "untried" as something "(1) not tested or proved by experience or trial . . . (3) not tried in court." It is a fundamental rule of law in the construction of statutes, that words and phrases are to be construed according to the commonly approved usage of the language. *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 100. "Or stated another way, statutory language is to be given its plain and ordinary meaning." *Klapproth* v. *Turner,* 156 Conn. 276, 280.

The case of *Bursque* v. *Moore,* 26 Conn. Sup. 469, cited by the plaintiff, is inapplicable to the question of the interpretation to be given to the word "untried" because in *Bursque* the charge of obtaining money by false pretenses, lodged by the state

of New Hampshire, was pending against the plaintiff and was, therefore, "untried" when he sought the benefit of the detainer act. The Appellate Division of the New York Supreme Court, in *People v. Batalias,* 35 App. Div. 2d 740, held that a charge of violation of probation was not an "untried indictment, information or complaint" within the meaning of the statute requiring a defendant to be brought to trial within 180 days following his request. A similar decision was reached in *Suggs v. Hopper,* 234 Ga. 242, 243, where the Georgia court reasoned that "[t]hese are pre-trial, and not sentencing, considerations" and concluded that the agreement on detainers does not apply to warrants for arrest for probation violations.

In *Fasenmyer v. Wainwright,* 230 So. 2d 129 (Fla.), an alternative writ of mandamus was discharged where the claim was made by the plaintiff that the state of Florida had abandoned any right to have him stand trial for escaping from custody while serving several sentences imposed on him by that state. "If a person charged with the commission of a felony escapes from lawful custody he waives any right to object to the filing of a detainer in another jurisdiction by the authorities from whose custody he first escaped." Id., p. 130. The court reasoned that "[m]ere delay is not an abandonment of prosecution, as the responsibility rests upon the escapee to either surrender to the authorities or, if incarcerated in another jurisdiction, seek a speedy trial." Ibid.

In *People v. Randolph,* 85 Misc. 2d 1022 (N.Y.), the defendant, who had been convicted on a plea of guilty in New York but not yet sentenced, fled to North Carolina and was there incarcerated on another charge. On a petition for a writ of habeas corpus based on the detainer act the court held that

the defendant was not untried for purposes of the agreement and reasoned (p. 1024) that even though the agreement on detainers commands a liberal construction of the statute, "a judicially created amendment broadening the statute's applicability to tried but not sentenced defendants constitutes more than mere liberal construction. . . . If the agreement is to be enlarged to include those in the defendant's position, it is for the Legislatures of the several signatory States to accomplish that result."

This court, however, is not persuaded by the reasoning in the above-cited decisions for they obviously overlook the legislative history of the interstate agreement on detainers developed by the committee of state officials on suggested state legislation of the council of state governments, Suggested State Legislation Program for 1957, wherein a detainer is defined (p. 74) "as a warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer. . . . Such detainers may be placed by various authorities under varying conditions, for example, *when an escaped prisoner or a parolee commits a new crime and is imprisoned in another state.*" (Emphasis added.) Obviously, then, the agreement on detainers was intended to include situations such as the one at bar, i.e., where a person during the term of his imprisonment escapes from the custody of the authorities and commits a crime in a foreign state for which he is serving a sentence.

"The court, in construing a legislative act, considers its history, its language, the purpose it is designed to serve and the circumstances surrounding its enactment . . . ." *Bahre* v. *Hogbloom,* 162 Conn. 549, 554. The purpose of the act is clearly spelled out in the agreement as above summarized.

A person against whom an extradition warrant has been issued is given the opportunity to prove conclusively in a habeas corpus proceeding that he is not a fugitive from the demanding state and thereby to defeat the prima facie case made by the governor's warrant. *Reynolds* v. *Conway,* 161 Conn. 329, 334. In that regard, therefore, the governor's warrant is a pending or untried complaint against him and clearly comes within the purview of the agreement. A complaint is defined in Webster's Third New International Dictionary as follows: "d: formal allegation or charge against a party made or presented to the appropriate court or officer (as for a wrong done or crime committed) and variously applied . . . ." It is "but an allegation or accusation." See *State* v. *Couture,* 151 Conn. 213, 219.

Furthermore, such an interpretation does not do violence to the meaning ascribed to the word "untried" by common usage, especially in view of the history of the compact specifically covering situations involving escaped prisoners.

The application for the return of the plaintiff to the state of North Carolina charges that the plaintiff escaped from custody prior to the completion of his sentence. The warrant issued by the governor of the state of Connecticut charges him *"with the crime of escape prior to completion of sentence."* (Emphasis added.) Obviously, then, it is not a distortion of the English language to conclude that a charge or complaint is pending against the plaintiff within the meaning and intendment of the compact on detainers.

"[A] governor has no jurisdiction to issue a warrant for the return to a demanding state of a person charged with a crime unless there is probable cause that the person is a fugitive from justice." *Stenz*

v. *Sandstrom,* 143 Conn. 72, 75. Owing to the failure of the prosecuting authorities to bring the plaintiff to trial within the prescribed time limit of 180 days after his demand, the detainer became ineffectual and the prisoner ceased to be a fugitive from justice. It follows from this that the governor lacked jurisdiction to issue her rendition warrant in the case at bar. *Bursque* v. *Moore,* 26 Conn. Sup. 469, 475.

In effect, then, the agreement on detainers serves as a statute of limitations, when exercised by a plaintiff, on the right of a demanding state to extradite him under the provisions of the extradition act. That reasoning is in accord with the fundamentally established rule that statutes are to be reconciled and given concurrent effect in their interpretation whenever possible. *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 404; *Shanley* v. *Jankura,* 144 Conn. 694, 702.

For the reasons above given the court does not agree with the dicta appearing in *Matter of Baker* v. *Schubin,* 72 Misc. 2d 413, 419 (N.Y.), wherein it is stated that "vacatur of the detainer warrant lodged with custodial officials does not preclude the prosecuting State from seeking extradition in this State for the underlying criminal act pursuant to appropriate statutory authority."

Accordingly, the petition for a writ of habeas corpus is granted and the plaintiff is ordered discharged forthwith.