STATE OF CONNECTICUT *v.* ANONYMOUS (1980–6)*

SUPERIOR COURT

DUPONT, J. The defendant seeks dismissal of an information charging him with robbery in the first degree claiming that he was not brought to trial within the time limits prescribed by General Statutes § 54-186, the Agreement on Detainers.

The defendant was sentenced in Virginia on March 29, 1979, to an effective term of imprisonment of five years. On June 8, 1979, he filed a request form with the Virginia authorities, seeking a fast and speedy trial in Connecticut, which request referred to an earlier undated similar request. On June 14, 1979, the records custodian in Richmond, Virginia, noted on the form that the defendant's request would be processed on the same date. On July 6, 1979, the defendant was advised by the Virginia department of corrections that he would need to sign other forms in connection with his request and that he should write another letter to "Classification and Records" to obtain the forms.

On July 24, 1979, the defendant acknowledged receipt of formal notice of the untried information in Connecticut and on July 24, 1979, the defendant signed a request for counsel in connection with his

---

* Thus entitled, in view of General Statutes § 54-142a.

notice of request for disposition of information. That notice was dated July 17, 1979, and was directed to the Connecticut prosecuting officer and the court. The parties agree that that notice and an "Offer to Deliver Temporary Custody" were mailed by the Virginia authorities to the state's attorney on July 30, 1979. The parties further agree that on August 6, 1979, a senior inspector in the state's attorney's office wrote to the Virginia authorities stating that the paper work for the defendant's request had been misplaced, and asking for copies. The defendant urges that the court find that the latest possible date for receipt of the forms in the state's attorney's office was August 3, 1979, the Friday preceding August 6, 1979. To find otherwise would mean that the letter of the senior inspector is to be read as though it said, "The paper work which was received today, has been misplaced today." Such an interpretation is hardly credible. The court, therefore, finds that the date on which the Connecticut prosecuting authority received written notice of the defendant's request for a final disposition of his information in Connecticut was August 3, 1979, the last business day preceding the writing of the letter.

The defendant was transferred to Connecticut on October 9, 1979. He pleaded not guilty on October 19, 1979, filed a motion for discovery and a motion to suppress identification on October 30, 1979, and filed the present motion to dismiss on February 1, 1980. The state filed a demand for notice of alibi defense and a motion for disclosure and inspection on October 17, 1979. A clerk of the Superior Court testified at the hearing on the present motion that the defendant's case was assigned for a pretrial hearing on January 16, 1980, but that he did not know if that hearing occurred in fact, and that the defendant's case is not on the printed trial assign-

ment list. He further testified that the defendant's request for trial pursuant to § 54-186 is not noted in the file. The file does not reflect that any continuances of the matter were granted in open court.

The pertinent sections of article III of § 54-186 involved in the defendant's motion to dismiss are as follows: "(a) Whenever a person has entered . . . a term of imprisonment in a penal . . . institution of a party state, . . . and there is pending in any other party state any untried . . . information . . . on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of his imprisonment and his request for a final disposition to be made of the . . . information . . . ; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request . . . shall be accompanied by a certificate of the appropriate official having custody of the prisoner . . . . (b) The written notice . . . shall be given or sent by the prisoner to the warden, . . . or other official having custody of him, who shall promptly forward it . . . by registered or certified mail, return receipt requested."

Article VI of § 54-186 states that in determining the duration of the time period of article III, the running of time shall be tolled whenever the prisoner is unable to stand trial as determined by the court having jurisdiction of the matter.

The state claims that the execution of the forms by the defendant on July 24, 1979, did not trigger the running of the 180 days set forth in article III. In support of its position it cites *State* v. *Springer*,

149 Conn. 244. That case holds that the language of General Statutes § 54-139 which deals with intra-state detainers as opposed to interstate detainers, requires that the time period begins to run from the date the prosecutor receives the written notice. It interprets the words "shall have caused to be delivered" as equivalent to "has delivered." The case of *State* v. *Best,* 171 Conn. 487, reiterates the holding, stating specifically that the time begins to run from when both the court and the prosecutor have been notified. The language of § 54-139 and § 54-186 is substantially similar.

The only Connecticut case arising under the inter-state agreement of which counsel and the court are aware is *Bursque* v. *Moore,* 26 Conn. Sup. 469. In that case, the state claimed that the statutory period of § 54-186 did not begin to run because Connecticut failed to offer to deliver temporary custody of its prisoner to New Hampshire. The court concluded that if the state's contention were correct, the pur-pose of the agreement, to provide cooperative pro-cedures among party states to allow prisoners the assurance of a speedy trial on outstanding charges elsewhere and to allow better use by prisoners of rehabilitation programs, could be circumvented by inaction on the part of the custodial authorities. Although the facts of that case were blatantly unfair to the prisoner, involving as they did between thirty-five and fifty written requests of the prisoner for a speedy resolution of the detainers lodged by New Hampshire, and although the language "shall have caused to be delivered" was not in question, the fact remains that the court held that the inac-tion of the custodial state could not defeat the rights of a prisoner for a speedy resolution of detainers lodged against him under the Agreement on Detain-ers. There are decisions in other jurisdictions in accord with *Bursque* and which interpret the inter-

state agreement and intrastate legislation as placing no burden on the prisoner relating to the overseeing of compliance with the act by his custodians; *Pittman* v. *State,* 301 A.2d 509 (Del.); *Pierson* v. *State,* 210 Kan. 367; although it does place upon him the burden of giving or sending notice to his custodian. *Beebe* v. *State,* 346 A.2d 169 (Del.); See *Commonwealth* v. *Fasano,* 6 Mass. App. Ct. 325.

In *Bursque* the court noted that the prisoner did not seek mandamus to ensure compliance with the interstate agreement, although the *Springer* court stated that the prisoner could have used mandamus in an *intrastate* setting to compel compliance.

Some states have held that the rationale of the interstate and intrastate detainer acts should be equated; *Isaacs* v. *State,* 31 Md. App. 604; *Ekis* v. *Darr,* 217 Kan. 817; and that under the intrastate or interstate legislation, the statutory period does not begin to run until both the court and the state's attorney have been notified of the defendant's intent to invoke the act. *Bey* v. *State,* 36 Md. App. 529; *King* v. *State,* 5 Md. App. 652. Other states have also held that under the interstate legislation, the time within which the defendant must be brought to trial runs from when the appropriate documents are delivered to the prosecutor and the court. *State* v. *Ternaku,* 156 N.J. Super. 30.

The case of *United States* v. *Mauro,* 436 U.S. 340, reviews the purposes of the Interstate Detainer Agreement, and sub silentio decides that the prisoner's request for a final disposition of charges pending against him elsewhere marks the beginning of the time within which he must be brought to trial.

It appears to this court that there are reasons to interpret the interstate legislation on detainers differently from intrastate legislation. Within a given

state, prisoners are under a tighter control, with the custodian already having obtained custody; there is already uniformity of rehabilitation procedures; and the prisoner has greater familiarity with sentencing, parole and trial procedures leading to less uncertainty as to his future. A prisoner incarcerated within a state is better able to interview witnesses and to prepare for another trial within the state than he would be if he were incarcerated outside of the state. Although neither kind of legislation provides sanctions for failure of the custodian to comply with the mandates, other than dismissal of the charges against the defendant in appropriate cases, nonlegislative sanctions are more likely within a state where the custodian has been dilatory. A prisoner is more likely in an intrastate scene to be aware of noncompliance by his custodian than he is if dual jurisdictions are involved.

For purposes of this case, however, it is unnecessary to decide whether § 54-186 is to be governed by the holding in *State* v. *Springer,* supra. Even if the 180 day time period should run from the date of notice to the state's attorney, August 3, 1979, rather than from the date the defendant complied with any conceivable obligation he had under the agreement, July 24, 1979, more than 180 days ran before the filing of the defendant's motion to dismiss.

The state also argues that the filing of motions by the defendant tolled the running of the time in which the defendant should have been brought to trial. The defendant should not be precluded from making motions for discovery while the time period runs. He cannot know at the time of filing whether the state will proceed to trial in a timely fashion but must assume that his preparation is essential in case the state does proceed. In *Commonwealth* v. *Fasano,* supra, the defendant's counsel agreed to

continuances and in *State* v. *Ternaku,* the trial judge specifically tolled the running of the time period because the only sitting judge available to try the case had to disqualify himself.

Here, no continuances have been noted on the record. The file shows no record of a continuance for good cause granted in open court with either the defendant or his counsel present. The file shows that the running of the time period was not tolled by the court at any time after a determination that the prisoner was unable to stand trial.

The motion to dismiss is, therefore, granted.