# ANTHONY P. GIARDINO *v.* DAVID BOURBEAU ET AL.
## (11413)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued December 2, 1983—decision released May 1, 1984

*Alphonse DiBenedetto,* public defender, for the appellant (plaintiff).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Michael Dearington,* assistant state's attorney, for the appellee (named defendant).

SPEZIALE, C. J. This appeal concerns the validity of a governor's rendition warrant ordering the extradition of a Connecticut prisoner where the state violated the Interstate Agreement on Detainers (hereinafter IAD); General Statutes §§ 54-186 through 54-192; before the warrant was issued. The trial court dismissed the plaintiff's petition for a writ of habeas corpus and the plaintiff has appealed. We find no error.

The factual findings made by the trial court are not disputed: On August 27, 1979, the plaintiff was placed on parole from a prison sentence in Connecticut. On March 24, 1980, he was arrested for allegedly violating the conditions of that parole. On April 1, 1980, while incarcerated for the alleged parole violation, the plaintiff was arraigned on a Connecticut charge of being a fugitive from justice; General Statutes § 54-169; based on crimes he allegedly committed in Virginia during his parole. This Connecticut charge was later nolled.

On May 27, 1980, the commonwealth of Virginia, through its prosecuting officials, filed a detainer against the plaintiff pursuant to the IAD,[1] at the New Haven County jail where he was then confined. The detainer[2] was based upon three indictments against the plain-

---

[1] The state of Connecticut is a signatory of the Interstate Agreement on Detainers. General Statutes §§ 54-186 through 54-192.

[2] The IAD does not define the term "detainer." See General Statutes §§ 54-186 through 54-192. The United States Supreme Court, however, has defined the term as " 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *United States* v. *Mauro,* 436 U.S. 340, 359, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978), quoting H.R. Rep. No.

tiff handed down in Virginia. Officials at the New Haven County jail immediately notified the plaintiff of the detainer.

After filing the detainer the commonwealth of Virginia also filed, in accordance with article III (a) of the IAD, a request for temporary custody of the plaintiff for the purpose of returning him to Virginia for trial on the indicted offenses. The temporary custody request was never acted upon, and the plaintiff was not advised of the request nor was he ever returned to Virginia for trial.

On January 29, 1981, approximately eight months after the detainer was filed, a Connecticut corrections officer presented the plaintiff with what is known as a form 2,[3] advising the plaintiff of his right to request final disposition of the charges upon which the detainer was based. Because the Connecticut charge of being a fugitive from justice had been nolled, the plaintiff erroneously assumed that the Virginia charges had been dropped. The plaintiff told the official that he was not the subject of any foreign criminal charge and refused to sign the form.

On June 19, 1981, having been unsuccessful in obtaining custody of the plaintiff under the terms of the IAD, the commonwealth of Virginia sought custody through extradition. On August 7, 1981, the governor of Connecticut, on request by the governor of Virginia, issued a rendition warrant against the plaintiff based on the same charges for which the detainer had been filed.[4]

91-1018, p. 2 (1970); S. Rep. No. 91-1356, p. 2 (1970); quoted in *Cuyler* v. *Adams*, 449 U.S. 433, 436 n.3, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981).

   [3] A form 2, when completed by a prisoner, gives notice of his place of imprisonment and his request for disposition of foreign indictments, informations, or complaints.

   [4] The Virginia authorities first sought extradition on July 25, 1980. The governor of Connecticut declined to issue a rendition warrant at that time because the plaintiff was then serving the sentence imposed by Connecticut. By letter dated October 10, 1980, the governor of Connecticut sug-

The warrant represented that the plaintiff "stands charged with the crime of Robbery, Abduction and Use of Firearm in Commission of Robbery committed in the City of Bristol, Virginia in said State, on or about March 13, 1980, and that he has fled from justice . . . ." Trooper David Bourbeau, of the Connecticut state police, arrested the plaintiff under the authority of that rendition warrant.

The plaintiff then petitioned for a writ of habeas corpus to the Superior Court for the judicial district of New Haven, naming Bourbeau and Warden Victor Liburdi as defendants, claiming that his continued incarceration, under authority of the rendition warrant, constituted an illegal deprivation of his liberty. The plaintiff alleged that in serving the detainer filed by the commonwealth of Virginia on May 27, 1980, Connecticut corrections officials failed to advise the plaintiff of his right under article III (c)[5] of the IAD to demand "speedy disposition" of the underlying Virginia charges. The plaintiff asserted, inter alia, that this violation of the IAD required invalidation of the rendition warrant.

On March 29, 1982, after a hearing, the trial court found for the defendants and rendered judgment dismissing the plaintiff's petition for a writ of habeas corpus. In its memorandum of decision the trial court found that Connecticut corrections officials did in fact violate the plaintiff's rights under the IAD by failing

gested that the Virginia authorities submit another extradition request when the plaintiff's Connecticut jail sentence neared its end. Thus, on June 19, 1981, the Virginia authorities again requested extradition, which was granted.

[5] "[General Statutes § 54-186, art. III] . . . . (c) The warden, commissioner of correction or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based."

to advise him of his "right . . . to demand a speedy trial" of the foreign charges until eight months after the detainer was filed. Nevertheless, the trial court, under the principles announced in *Michigan* v. *Doran,* 439 U.S. 282, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978), and *Narel* v. *Liburdi,* 185 Conn. 562, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982), dismissed the plaintiff's petition and stated, inter alia, that "[n]otwithstanding this flagrant violation of the plaintiff's rights under I.A.D., this court is without jurisdiction to deny extradition of the plaintiff to Virginia under the Constitution; Article IV, § 2; and the Uniform Criminal Extradition Act; General Statutes, § 54-157 *et seq."*

On appeal the plaintiff contends that the trial court erred in concluding that it was without authority to invalidate the governor's rendition warrant on the basis of an earlier IAD violation concerning the same foreign charges. In essence, the plaintiff argues that because Connecticut officials violated article III of the IAD in serving the detainer filed by the commonwealth of Virginia, the governor of Connecticut had no jurisdiction to issue a rendition warrant on the same underlying charges at a later point. We disagree.

Extradition proceedings frequently give rise to questions concerning the respective rights and duties of both the demanding state and the asylum state. Such questions are of both constitutional and statutory dimension. Article IV, § 2, cl. 2 of the United States constitution states: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." As pertains to Connecticut, the provisions of the extradition clause have been implemented by both federal and state legis-

lation. Federal statutory law provides that when the governor of a state certifies an indictment charging a resident of another state with a crime and delivers a copy of that indictment along with a demand for extradition of the subject to the governor of the asylum state, the asylum state must arrest the subject and deliver him or her to the demanding state. 18 U.S.C. § 3182.[6] The Uniform Criminal Extradition Act,[7] adopted by the General Assembly as General Statutes §§ 54-157 through 54-185, likewise provides, in relevant part: "Subject to the provisions of this chapter, the provisions of the constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this

---

[6] 18 U.S.C. § 3182 provides in relevant part: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

[7] The federal statute, 18 U.S.C. § 3182, that implements the extradition clause of the United States constitution, is not a comprehensive statement of law of extradition. Although it is somewhat more detailed than the extradition clause itself, the statute does not address the procedural complications that attend extradition. The states may therefore establish ancillary provisions consistent with the command of the statute. See *Re Carden,* 291 Or. 515, 635 P.2d 341 (1981); *Spiak* v. *Seay,* 185 Va. 710, 40 S.E.2d 250 (1946); *State ex rel. Sieloff* v. *Golz,* 80 Wis. 2d 225, 258 N.W.2d 700 (1977).

state." General Statutes § 54-158; see *Barrila* v. *Blake,* 190 Conn. 631, 634, 461 A.2d 1375 (1983).

The purpose of the extradition clause is twofold: to effectuate the principles of comity by compelling each state to arrest a resident who has been indicted in a sister state and surrender custody to the demanding state; and, to hasten the process of doing so by allowing the asylum state only minimal inquiry into the underlying charge. *Michigan* v. *Doran,* supra, 287–88; *Biddinger* v. *Commissioner of Police,* 245 U.S. 128, 132–33, 38 S. Ct. 41, 62 L. Ed. 193 (1917); *Appleyard* v. *Massachusetts,* 203 U.S. 222, 227, 27 S. Ct. 122, 51 L. Ed. 161 (1906). "Whatever the scope of discretion vested in the governor of an asylum state, the courts of an asylum state are bound by Art. IV, § 2, by § 3182, and, where adopted, by the Uniform Criminal Extradition Act. . . . A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met." (Citations omitted.) *Michigan* v. *Doran,* supra, 288–89. In guiding the state courts as to the proper scope of their inquiry on these matters of federal law the United States Supreme Court adopted a four-part test, setting out a specific and comprehensive list of those matters that a court in an asylum state may examine on a petition for habeas corpus: "Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." Id., 289; see *Cuyler* v. *Adams,* 449 U.S. 433, 443 n.11, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981); *Barrila* v. *Blake,* supra, 634; *Hill* v. *Blake,* 186 Conn. 404, 409 n.5, 441 A.2d 841 (1982); *Narel* v. *Liburdi,* supra.

We recognize that the narrow issue in *Michigan* v. *Doran* was whether a court in an asylum state might inquire as to whether probable cause existed for the issuance of an indictment in the demanding state sufficient to satisfy fourth amendment protections. *Michigan* v. *Doran,* supra, 283. The question presented here, whether postindictment procedural errors may bar extradition, was not addressed. Nevertheless, in considering habeas corpus challenges to extradition warrants, courts of asylum states must abide by the United States Supreme Court's directive. The majority opinion in *Michigan* v. *Doran* did not confine itself to analysis of the criminal defendant's fourth amendment rights in extradition cases. See *Michigan* v. *Doran,* supra, 290–98 (Blackmun, J., concurring). Rather, it delivered a comprehensive statement of the individual states' rights under federal constitutional and statutory law to carry out criminal prosecutions unimpeded by strict considerations of the sovereignty of sister states. "In the administration of justice, no less than in trade and commerce, national unity was thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy." Id., 288. Given such a clear directive concerning the role of state courts in these matters of federal law, state courts may not expand their inquiry beyond the four-part test set out in *Michigan* v. *Doran,* supra. See *Barrila* v. *Blake,* supra; *Hill* v. *Blake,* supra; *Narel* v. *Liburdi,* supra; *Lomax* v. *Cronin,* 194 Colo. 523, 575 P.2d 1285 (1978); *Stack* v. *State ex rel. Morgan,* 381 So. 2d 366 (Fla. App. 1980); *People* v. *McInery,* 46 Ill. Dec. 122, 91 Ill. App. 3d 68, 413 N.E.2d 876 (1980); *Statchuk* v. *Warden,* 53 Md. App. 680, 455 A.2d 1000 (1983); *Petition of Upton,* 387 Mass. 359, 439 N.E.2d 1216 (1982); *State* v. *Bailey,* 262 N.W.2d 406 (Minn. 1977); *Commonwealth* v. *Inadi,* 303 Pa. Super. 409, 449 A.2d 753 (1982). Thus, on a petition for habeas corpus, a court in the asylum state may invalidate a governor's

rendition warrant only if it finds an infirmity in one of the four areas into which it may inquire. The question before us on this appeal is whether a violation of the plaintiff's rights under article III of the IAD by the custodial state constitutes such an infirmity.

The IAD is designed to facilitate the process of bringing to trial in one state a person who is then incarcerated in another state. "The provisions of the agreement itself are activated only when the receiving or charging state lodges with the sending or asylum state a detainer based on a pending indictment, information or complaint. *People* v. *Lincoln,* 42 Colo. App. 512, 514, 601 P.2d 641 (1979); *Burns* v. *State,* 578 S.W.2d 650, 652 (Tenn. Crim. App. 1978)." *Narel* v. *Liburdi,* supra, 567. After lodging the detainer an appropriate officer of the demanding state may make a written request for temporary custody of the prisoner for the purpose of trying those indictments, informations, or complaints that form the basis of the detainer. General Statutes § 54-186 (IAD), art. IV (a) and (c).[8] Unless the gover-

---

[8] "[General Statutes § 54-186, art. IV] (a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request; and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

\* \* \*

"(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

nor of the asylum state disapproves the request for temporary custody within thirty days of its filing, the demanding state "shall be entitled to have a prisoner against whom [it] has lodged a detainer." Id.

The IAD also grants specific rights to one against whom a detainer is filed: custodial officials must promptly notify the prisoner of the source and contents of the detainer and of the prisoner's right to request a final disposition of the foreign charge; General Statutes § 54-186, art. III (c); the prisoner, upon notifying prosecuting officials in the demanding state of his or her request for a final disposition of the charge, must be brought to trial within 180 days of the request; General Statutes § 54-186, art. III (a);[9] if the demanding state refuses temporary custody after making such a request, or fails to bring the prisoner to trial within 180 days of the prisoner's request for a final disposition, "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect"; General Statutes § 54-186,

---

[9] "[General Statutes § 54-186, art. III] (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of the imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

art. V (c);[10] and the indictment, information, or complaint must also be dismissed if the demanding state returns the prisoner to the asylum state without trial on the underlying charge. General Statutes § 54-186, art. IV (e).[11]

In this case Connecticut corrections officials violated article III (c) of the IAD by failing to inform the plaintiff promptly of his right to request a final disposition of the charge. In fact, the plaintiff was not so advised until approximately eight months after the detainer was filed. Although this failure clearly violates the IAD and even though under the IAD custodial officers in the asylum and the demanding states are agents for each other; *Narel* v. *Liburdi,* supra, 572; none of the articles specifies any remedy for that particular violation. And, because the underlying charges rest in the commonwealth of Virginia, a Connecticut court is powerless to dismiss them. Id., 570.

On appeal the plaintiff argues that although a Connecticut court is powerless to dismiss the Virginia charges, it may nevertheless rule that, for purposes of extradition, he is no longer a fugitive. Under the principles announced in *Michigan* v. *Doran,* we may consider this claim. "Fugitive status is a question properly to be decided by the courts in . . . the custodial state."

---

[10] "[General Statutes § 54-186, art. V] (c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

[11] "[General Statutes § 54-186, art. IV] (e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V (e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

*Barrila* v. *Blake,* supra, 634; *Narel* v. *Liburdi,* supra, 565; *Ross* v. *Hegstrom,* 157 Conn. 403, 410, 254 A.2d 556 (1969). We consider the claim, but find it to be without merit.

As long as the underlying charge exists in the commonwealth of Virginia the plaintiff remains a fugitive within the contemplation of the extradition clause and the extradition statutes. See U.S. Const., art. IV § 2; 18 U.S.C. § 3182; General Statutes § 54-158. "A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any State." *Appleyard* v. *Massachusetts,* supra, 227. "A person is a fugitive from justice if he commits a crime in one state and is thereafter found in another state. *Appleyard* v. *Massachusetts,* [supra, 229]; *Ross* v. *Hegstrom,* supra, 411–12; *Moulthrope* v. *Matus,* 139 Conn. 272, 275–76, 93 A.2d 149 (1952), cert. denied, 345 U.S. 926, 73 S. Ct. 785, 97 L. Ed. 1357 (1953)." *Barrila* v. *Blake,* supra, 634–35.

Although the violation of the plaintiff's rights under the IAD may constitute a bar to conviction on the commonwealth of Virginia's charges against him, Virginia has not yet dismissed them. Those charges are still outstanding, and thus the plaintiff remains a fugitive.

Therefore, because there has been no finding that the extradition documents are facially improper or that this plaintiff is not the person named in the extradition request, the only matters into which a Connecticut court may inquire are in order and do not justify invalidation of the governor's rendition warrant. *Michigan* v. *Doran,* supra.

We must, therefore, allow the extradition to proceed. The plaintiff must rely on the Virginia courts to vindicate his rights under the IAD.

There is no error.

In this opinion the other judges concurred.