## DAVID FRANCIS GAY, petitioner.

Middlesex. December 4, 1989. - January 17, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Extradition and Rendition. Habeas Corpus. Practice, Criminal,* Detainer. *Interstate Agreement on Detainers. Words,* "Fugitive."

A petitioner who, after his release from incarceration in the Common-
wealth, had been arrested on a warrant issued by the Governor com-
manding his return to California for trial on a criminal charge was not
entitled to habeas corpus relief on the basis of California's alleged vio-
lation of the petitioner's rights under art. III (a) of the Interstate
Agreement on Detainers, for its failure to bring him to trial within the
180-day period specified in the agreement. [474-477]

PETITION for a writ of habeas corpus filed in the Superior
Court Department on June 20, 1989.

The case was heard by *Joseph S. Mitchell, Jr.,* J.

*Milly Whatley,* Committee for Public Counsel Services,
for the petitioner.

*Abbe L. Ross,* Assistant Attorney General, for the
Commonwealth.

GREANEY, J. While incarcerated at Massachusetts Correc-
tional Institution, Gardner, in May, 1988, petitioner, David
Francis Gay, received formal notification that two detainers[1]
had been filed against him by the State of California.[2] The

---

[1] A "detainer" is a "notification filed with the institution in which a pris-
oner is serving a sentence, advising that he is wanted to face pending crim-
inal charges in another jurisdiction." *United States* v. *Mauro,* 436 U.S.
340, 359 (1978), quoting H.R. Rep. No. 91-1018, p. 2 (1970); S. Rep. No.
91-1356, p. 2 (1970).

[2] The Commonwealth disputes the existence of the detainers, which have
not been reproduced in the record. The judge in the Superior Court who
heard the matter decided that detainers existed based on (a) evidence that
Gay had made formal requests for the disposition of the California

detainers alleged that Gay had committed burglary and a parole violation in California. On May 23, 1989, pursuant to his rights under the Interstate Agreement on Detainers (Agreement), to which both Massachusetts and California are parties, see St. 1965, c. 892, and Cal. Penal Code § 1389 (West 1982), Gay requested final disposition of the charges underlying both detainers. The California Parole and Community Service Division received Gay's request on May 31, 1988.

The Agreement requires that Gay "be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint" charged in the detainers. Art. III (a), St. 1965, c. 892. It is undisputed that Gay complied with the requirements of this provision. California, however, took no action with respect to the burglary detainer within the 180-day time limit specified in art. III (a) of the Agreement.[3]

Gay was paroled from his Massachusetts sentence on March 31, 1989, and took up residence in Northampton. On June 14, 1989, he was arrested there on a warrant issued by the Governor of the Commonwealth commanding his return to California to face the burglary charge. Gay subsequently filed a petition for a writ of habeas corpus in the Superior Court. He contends that the Governor's warrant under which he is being held is invalid due to California's failure to bring him to trial within 180 days as provided in the Agreement. Due to this failure, Gay argues, he ceased to be a fugitive

charges; (b) the document in the record entitled "Notice of Untried Indictment, Information or Complaint and Right to Request Disposition"; and (c) Gay's testimony that he was notified of the detainers while serving his sentence at M.C.I., Gardner. There is a sufficient evidentiary basis for the judge to have found that the detainers existed, and his finding of that fact is not clearly erroneous.

[3]Gay was discharged from his California parole on August 8, 1988. The detainer charging him with a parole violation thus is not at issue in this appeal.

from justice on the expiration of the 180-day period, and the Governor of the Commonwealth therefore lacked jurisdiction to issue a warrant for his arrest and extradition.

A judge of the Superior Court considered Gay's petition and reasoned that "neither the [Agreement] nor any other source authorizes a sending State (here, Massachusetts) to dismiss or otherwise invalidate a charge in the receiving State (here, [California]) underlying a detainer for noncompliance with the [Agreement] or even to inquire into such compliance." *Cross* v. *Commissioner of Correction*, 27 Mass. App. Ct. 1154, 1155 (1989). That inquiry, concluded the Superior Court judge, can be made only in a California court. Accordingly, an order entered dismissing Gay's habeas corpus petition. Gay appealed, and we transferred the appeal to this court on our own motion. We affirm the order dismissing the petition for habeas corpus.

Before addressing the merits of this case, we find it helpful briefly to outline the various statutory and constitutional provisions that play a part in our analysis. The Agreement, St. 1965, c. 892, is an interstate compact[4] designed to facilitate the "expeditious and orderly disposition" of detainers. Agreement, art. I. Also relevant to our inquiry is the Uniform Criminal Interstate Rendition Law (Rendition Law), G. L. c. 276, §§ 11-20R (1988 ed.).[5] That law also provides a mechanism for the orderly transfer of individuals to face criminal charges in another State. A primary difference between these statutes, which is relevant here, is that the Ren-

[4]Because the Agreement is an interstate compact to which Congress has consented, its interpretation presents a question of Federal law. See *Cuyler* v. *Adams*, 449 U.S. 433, 442 (1981).

[5]The Rendition Law is patterned after the Uniform Criminal Extradition Act, an interstate agreement in effect in more than forty States. See 11 U.L.A. 51 (Master ed. 1974), superseded by 11 U.L.A. 26 (Supp. 1989) (listing jurisdictions in which the Act has been adopted). See also *Maldonado, petitioner*, 364 Mass. 359, 360 (1973) (referring to G. L. c. 276, §§ 11-20R, as the "Uniform Criminal Extradition Act"). Thus, other State courts' interpretations of the Uniform Criminal Extradition Act are helpful in the interpretation of Massachusetts' Rendition Law.

dition Law applies to fugitives in general, whereas the Agreement applies only to prisoners. See *Dodson* v. *Cooper*, 705 P.2d 500, 502 (Colo. 1985), cert. denied, 474 U.S. 1084 (1986).[6] Finally, both statutes must be construed in light of, and harmonized with, the extradition clause of the Federal Constitution, U.S. Const., art. IV, § 2, cl. 2.[7]

With this background in mind, we now address the issue presented in this case: does a court of a sending State (here, Massachusetts) have jurisdiction to grant a habeas corpus petition predicated on the apparent failure of a receiving State (here, California) to comply with the Agreement? In answering this question, we must look to the language of both the Agreement and the Rendition Law. Gay appears to rest his argument solely on the Agreement. However, since he was not incarcerated at the time of his arrest on the Governor's warrant, the authority for ordering this extradition, if any exists, can be found only in the Rendition Law. Thus, we must ask whether noncompliance with the Agreement precludes the Rendition Law's requirements from being met. This inquiry compels us to interpret both statutes.

In order to issue a warrant under the Rendition Law, the Governor must find that the person demanded is "substantially charge[d]" with a violation of the receiving State's law. See G. L. c. 276, § 14 (1988 ed.). The fact that the Governor has issued an extradition warrant in this case provides prima facie evidence that this requirement, and all other applicable statutory prerequisites to extradition, have been met. See

---

[6]Courts also tend to use different terminology depending on the statute which is being construed. Under the Agreement, courts refer to the State of prosecution as the "receiving state," and the State where the defendant is incarcerated as the "sending state." Under the Rendition Law, the relevant terms are "demanding state" and "asylum state." For the sake of simplicity, we shall adopt the former set of terms for our discussion of both statutes.

[7]The extradition clause provides as follows: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

*Michigan* v. *Doran*, 439 U.S. 282, 289 (1978). To refute this showing, Gay must produce "clear and satisfactory" evidence that he is not in fact "substantially charge[d]" with a violation of California law. See *Upton, petitioner*, 387 Mass. 359, 363 (1982).

However, the ways in which Gay can make this showing in the context of a habeas corpus challenge in a sending State's court are strictly limited by the extradition clause of the Federal Constitution. The United States Supreme Court has observed that the extradition clause and implementing Federal legislation contemplate swift return of the individual to the receiving State. See *Sweeney* v. *Woodall*, 344 U.S. 86, 89-90 (1952). "To allow plenary review in the [sending] state of issues that can be fully litigated in the [receiving] state would defeat the plain purposes of the summary and mandatory procedures authorized by Art. IV, sec. 2." *Michigan* v. *Doran, supra* at 290. Thus, "[o]nce the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the [receiving] state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Id.* at 289. See *Upton, petitioner, supra* at 361 (sending State's scope of inquiry under Rendition Law limited to factors enunciated in *Michigan* v. *Doran*).

Gay argues that he is not a "fugitive," and thus may not be extradited pursuant to a Governor's warrant. His argument lacks merit. For extradition clause purposes, a "fugitive" is one who is charged with committing a crime in a State and who subsequently leaves that State, for whatever reason. See *Appleyard* v. *Massachusetts*, 203 U.S. 222, 227 (1906). Once having been charged and having fled the State, that person remains a fugitive until the charges against him are dropped. See *Giardino* v. *Bourbeau*, 193 Conn. 116, 127 (1984). Under this definition, it is clear that Gay is a fugitive. He has been charged with violating California's burglary statute, and is now present in Massachusetts. Further-

more, the charges against him have not been dropped by a California court.

Gay responds by arguing that, although no California court has expressly dismissed the burglary charge against him, a Massachusetts court nonetheless may treat that charge as having been dropped. While Gay's argument is not precisely formal in this regard, we sense that he is resting this argument on either of two principles: (1) that the California charge was dismissed by operation of law (namely under the terms of the Agreement) upon the expiration of the 180-day period; or (2) that a Massachusetts court has jurisdiction to dismiss a California charge due to noncompliance with the Agreement.

There is no basis in the language of the Agreement to support either theory. By its plain language, the Agreement provides that when the charges underlying a detainer are not disposed of within 180 days, "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." Agreement, art. V (c). This indicates not only that *some* judicial action is required to dismiss the charges, but that *only* the courts of the receiving jurisdiction have the power to take such action. See *Cross* v. *Commissioner of Correction*, 27 Mass. App. Ct. 1154, 1155 (1989). See also *In re Fabricant*, 118 Cal. App.3d 115, 120 (1981); *Giardino* v. *Bourbeau*, 193 Conn. 116, 126 (1984); *State ex rel. Chamberlain* v. *Martinco*, 288 Minn. 231, 234 (1970); *State* v. *West*, 79 N.J. Super. 379, 386 (1963).[8]

We therefore conclude that Gay remains a fugitive from California law, even assuming that California has violated the Agreement by not disposing of his pending burglary

---

[8]Some courts have intimated that this conclusion is compelled not only as a matter of statutory interpretation, but also as a matter of Federal constitutional law. See, e.g., *Maldonado, petitioner*, 364 Mass. 359, 365-366 (1973); *In re Fabricant*, 118 Cal. App.3d 115, 117, 120 (1981).

charge within 180 days.[9] Because he remains a fugitive, Gay has no basis upon which to challenge the issuance of the Governor's warrant providing for his extradition to California.[10]

The order dismissing the petition for a writ of habeas corpus is affirmed.

*So ordered.*

---

[9]Nothing said here should be interpreted as concluding that the Agreement has in fact been violated. Under the Agreement, disposition of the pending charges within 180 days is not an absolute requirement. See Agreement, art. III (a) (court having jurisdiction may grant "reasonable continuance" on showing of good cause); art. VI (a) (court having jurisdiction may toll 180 day period when petitioner is unable to stand trial).

[10]In so concluding, we are in agreement with the vast majority of State courts that have addressed this issue. See *State ex rel. Garner* v. *Gray*, 59 Wis.2d 323, 328-329 (1972), and cases cited. As contrary authority, petitioner refers us to two cases decided by lower State courts in Connecticut. See *Thomlinson* v. *Liburdi*, 34 Conn. Supp. 128 (1977); *Bursque* v. *Moore*, 26 Conn. Supp. 469 (1966). The continuing validity of these holdings is in serious doubt following the Connecticut Supreme Court's contrary ruling in *Giardino* v. *Bourbeau*, 193 Conn. 116 (1984). While *Giardino* did not expressly overrule or mention the *Thomlinson* or *Bursque* cases, it reached the opposite conclusion on precisely the same issue presented in those cases.